## D. A. DEWEY v. WILLIAM McLAIN.

1. PRACTICE—*Amendment—Name of Party.* Correcting a mistake in the name of a party where that party is fully described in the pleading, does not change substantially the claim or defense, and is no ground for reversal of a judgment.

2. CONSTITUTIONAL LAW—*Confiscation Act—Statute of Limitations.* Where real estate is seized, confiscated and sold under the provisions of the law of Congress of July 17, 1862, only the life estate is seized and sold, and the State limitation law of February 20, 1864, does not affect the right of the reversioner to recover the possession of the realty, after the termination of such life estate.

*Error from Jefferson District Court.*

EJECTMENT for 160 acres of land in Jefferson county. The action was commenced in the name of " *Levi McLain, Jr.*, by Thomas McLain, his guardian," as plaintiff. After the first trial the petition, on leave, was amended as to the name of the plaintiff, the name of *William McLain* being substituted for "Levi McLain, Jr."

The case was tried by the court, who found the follow-facts: On the 9th day of June, 1863, Levi McLain was the owner in fee-simple of the land in controversy. On that day a decree was duly entered in the United States District Court, confiscating, condemning and forfeiting said land to the United States, under the provisions of the act of Congress of July 17th, 1862. In the warrant of seizure, libel of information, and decree, said Levi Mc-Lain was alleged to be the owner. Eleven days there-after, and on June 20th, 1863, said McLain died in the confederate service, leaving plaintiff as sole heir. On December 4th, 1863, a writ of *venditioni exponas* was issued, and by virtue thereof said land was sold to *D. A. Dewey*, the defendant. The sale was confirmed April 13th, 1864. The marshal executed a deed to defendant April 22d, 1864, who immediately took possession and has held it ever since. The plaintiff *William McLain*, is aged about thirteen years, and is the son and only heir at law of said Levi McLain.

The defendant, in his answer, and at the trial, alleged that the claim of the plaintiff was barred by the limitation law of February 20th, 1864. This act is as follows:

" SEC. 1. In all cases where property, real or personal, or moneys or choses in action, secured by mortgage or unsecured, are or have been seized and confiscated by process of law, under the act of congress entitled ' An act to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes,' approved July 17, 1862, or any amendment thereto, all persons owning or claiming to own such property, moneys or choses in action, or to have any right, title or estate therein, at or before the time the same was so seized under such act of congress, and their assigns and legal representatives shall be forever barred from instituting suit in any court in this State, setting up or claiming any right in the same, as against the judicial decree of condemnation thereof, or when the

same is in the hands of any purchaser or sub-purchaser under said judicial decree, unless said suit shall be instituted within the following periods, to-wit: As to all such property, moneys, choses in action heretofore seized and judicially condemned, the time limited for the institution of such suit shall be six months after the taking effect of this act, and not thereafter; and as to all property, moneys, or choses in action hereafter so seized and judicially condemned, the time limited for the institution of such suit shall be six months after such decree of condemnation shall have been rendered, and not thereafter." (Laws of 1864, p. 154; Gen. Stat., p. 550.)

The district court held that the action was not barred, and upon the facts found gave judgment for the plaintiff for the recovery of the land. The defendant now brings the case here by petition in error for review.

*Clough & Wheat*, for plaintiff in error:

1. The court erred in permitting plaintiff's name to be changed from Levi McLain, Jr., to William McLain. Nash's Pleading, 109, 112, 113; code, §§ 117, 139, 143; 1 Kas., 426, 427.

2. The right of action of plaintiff below was barred by the statute of limitations, approved February 20, 1864. This act contains no exception, and the court cannot interpolate one.   9 How., 529; 2 Black, 604-5.

This was a proceeding *in rem*—"all the world are parties," etc.   18 How., 503.

The confiscation act is legal and valid—so recognized in 6 Wall., 759 to 773; and 9 Wall., 103. The word "representatives," in the law of 1864, above cited, includs *heirs*.   26 Cal., 23, 37; 21 How., 297; 15 Ill., 572. The writ could have been issued after the death of Levi McLain, the father, and still the proceedings would not be void.   12 Abbott's Pr., 286, 288, 289; 21 How. Pr., 34; 1 Cowen, 34; 13 Peters, 6.

The facts are fully found by the court below, and are not objected to by either party; and upon these facts this court should not only reverse the judgment, but should also itself render final judgment for plaintiff in error.

*C. K. Gilchrist*, for defendant in error:

1. The act of congress authorizing the property of rebels to be seized, etc., did not authorize the condemnation of anything more than the life estate of the rebel. See explanatory "Joint Resolution," approved July 17, 1862; acts of 2d session of 37th cong., pp. 313, 361.

To enable the party in possession of lands, under a confiscation and sale thereof, to avail himself of the benfits of the statute of limitations, he must hold such possession adversely, and not in subordination to the title of the owner; and if the possession be consistent with the title of the true owner, then the possessor is presumed to hold, in the absence of proof to the contrary, in subordination to such title. *Kirk v. Smith*, 9 Wheat., 241; *Ziller v. Eckhart*, 4 How., 289; *Turney v. Chambers*, 15 Ill., 273; *Kirk v. Nichols*, 2 J. J. Marsh., 169; Adams on Ej., 45; *Edgerton v. Byrd*, 6 Wis., 597; *Pillow v. Roberts*, 13 How., 477; *Jackson v. Sears*, 10 Johns., 440.

The title which Dewey obtained from the government by virtue of the marshal's sale, and his possession thereunder was in subordination to and consistent with that of the plaintiff, William McLain, and not hostile or adverse, and hence the said statute of limitations had no application to the case.

2. It was not error for the court to allow the plaintiff below to correct a mistake in his christian name. The pleadings showed that *William* claimed as the *heir* of *Levi McLain*. Such matters rest much in the discretion

of the judge, and the exercise of such discretion cannot be assigned for error, so long as it shall appear that the discretion has not been abused. Error must affirmatively appear. The order was warranted by § 139 of the code. Besides, Dewey has lost the benefit of his exception to the motion by .pleading to the merits of the amended petition and going to trial.

The opinion of the court was delivered by

BREWER, J.: Two questions are presented in the record. Until after one trial in the court below, the pleadings and proceedings were entitled in the name of "Levi McLain, Jr., by Thos. McLain his guardian." Then a

1. PRACTICE: amendment: name of party. motion was sustained to correct a mistake in the name of plaintiff, and the name was ordered changed in the pleadings and record from "Levi McLain, Jr." to "William McLain." Subsequently, an amended petition, answer and reply were filed. Trial and judgment thereon for plaintiff, defendant in error here. This correction of a mistake in the name is alleged for error. The court is in terms authorized to correct a mistake in the name of a party, when such amendment does not substantially change the claim or defense: Gen. Stat., p. 655, § 139. "The court in every stage of action must disregard any error or defect in the pleadings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect:" Gen. Stat., p. 655, § 140. The pleadings described the plaintiff as the son of one Levi McLain, whose land, confiscated by the United States in 1863, and sold under such confiscation proceedings to defendant, was in this suit sought to be recovered. The substantial allegation was that such

.a person made claim to the property; not that his name was so-and-so. With such a description of the person in the pleadings there can be no pretense that defendant was deceived as to the person, and we fail to see how his substantial rights have been affected.

II. The other and graver question is this: Is the claim of the plaintiff barred by the limitation law of February 20, 1864? The confiscation proceedings, under the law of congress approved July 17, 1862, (ch. 195, acts of second session, 37th congress, p. 313, and explanatory joint-resolution, p. 361,) reach only the *life estate*. This is settled by the decision of the Supreme Court of the United States: *Bigelow v. Forrest*, 9 Wall., 339; and being a construction of a statute of the United States, we follow that decision. The decree of June 9th, 1863, therefore, divested Levi McLain of his life estate, and vested the same in the United States. That life estate was all the United States had to sell; all we must presume, as we have not the writ before us, it attempted to sell, and all that Dewey could or did purchase. True, he purchased after the life estate had in fact terminated; but his purchase relates back to the decree; he bought what that ordered sold; he took possession under that. Obtaining possession through a sale under that decree, his rights are determined thereby. Entering into possession then as the claimant of a life estate, his possession was not adverse to, but consistent with and in subordination to the rights of the reversioner. Will such a possession set a statute of limitations to running? Ordinarily not. In the case of *Kirk v. Smith*, 9 Wheaton 241, Marshall, C. J., says one of the rules applicable to limitation laws " which has been recognized in the courts of England, and in all others where the rules established in those courts have

*2. Constitutional Law : confiscation act; limitation of action.*

been adopted, is, that possession, to give title, must be adversary—the word, indeed, is not to be found in the statutes, but the plainest dictates of common justice require that it should be employed." "It would shock that sense of right which must be felt equally by legislators and judges, if a possession which was permissive, and entirely consistent with the title of another, should silently bar that title. Several cases have been decided in this court in which the principle seems to have been considered as generally acknowledged, and in the State of Pennsylvania particularly it has been expressly recognized. To allow a different construction would be to make a statute of limitations a statute for the encouragement of fraud—a statute to enable one man to steal the title of another by professsing to hold under it. No laws admit of such a construction."

In the case of *Ziller v. Eckhart*, 4 Howard, 389, the Supreme Court of the United States says: That where "possession was *originally* taken and held in subserviency to the title of the real owner, a clear, positive, and continued disclaimer and disavowal of the title, and assertion of an adverse right, and to be brought home to the party, are indispensable before any foundation can be laid for the operation of the statute, otherwise the grossest injustice might be practiced; for without such notice, he might well rely upon the fiduciary relations under which the possession was originally taken and held, and upon the subordinate character of the possession as the legal result of those relations."

The Supreme Court of Illinois in the case of *Turner v. Chamberlin*, (15 Ill., 273,) says: "To constitute an adverse possession sufficient to defeat the right of action of the party who has the legal title, the possession must be *hostile in its inception*, and so continue without interruption

for the period of twenty years. It must be an actual, visible, and exclusive possession, *acquired* and *retained* under the claim of title *inconsistent* with that of the true owner."

In *Smith v. Burtis*, 9 Johns., 180, the court says : "The possession for ever so long a time, stripped of the circumstance that it is (un)accompanied with the claim of the entire *title will not amount to an adverse possession, barriny those who have the real and legitimate title."*

In *Jackson v. Parker*, 3 Johns. Cases, 124, the court says : "An entry *adverse* to the lawful possessor is not to be presumed. It must appear by proof."    *    *    * "The statute of limitations *could not begin to run* until the possession of the defendant was *avowedly* held in opposition to the right of the heirs."

But plaintiff in error claims that this being a proceeding *in rem*, the decree starts the statute above quoted, that "the time limited for the institution of such suit shall be six months after such decree of condemnation shall have been rendered, and not thereafter." But against a claim to what, does the running of the statute create a bar? Obviously, where by the lapse of time from a decree a party is barred from asserting a claim, it should be simply a claim to that taken by the decree. Here all taken by the decree was a life estate. A fair and natural construction of the statute would be, that the six-months limitation only barred a claim to that life estate, or some interest therein. The language is this : "All persons owning or claiming to own such property, money, or choses in action, or to have any right, title, or estate therein, and their assigns and legal representatives    *    *    *    shall be forever barred from    *    *    *    setting up or claiming any right in the same." The reversioner does not "own" the life estate; has no "right, title, or

Dewey v. McLain.

estate" therein. He does not in this action set up or claim any right in the life estate. He is seeking to enforce his right, as reversioner, to the possession—a right which did not commence till after the termination of the life estate, till every interest seized or affected by the decree was at an end. If he were seeking to recover the rents and profits which accrued during the life estate, the bar of the statute might be good. Any other construction would, except in cases where the party against whose property the proceedings were had died within six months after the decree, operate to deprive the reversioner of his estate without his day in court, and would therefore be unconstitutional. He could not bring suit to set aside the decree during those six months, because his title is not affected by that decree; nor to recover the possession of the land, for he has no right to the possession till the termination of the life estate. Thus, during the six months he would have no rights to present, and after the six months his rights would be barred by the statute. That would in effect deprive him of his reversion, without ever having a day in court. This transcends the power of the legislature; and if the act required this construction it would be as to such a party unconstitutional and void. But the construction we have indicated above, as the fair and natural one, obviates this difficulty. The legislature, aware that only the life estate could be taken in such proceedings, determined that whoever contested for that life estate as against the decree should do it speedily. This justifies the reasonableness of the time given by the statute, only six months, as well as the absence of all exceptions on account of minority or other disability. A person buying at a confiscation sale, bought the life estate, and unless such interest was questioned within six months

from the decree, his title thereto became absolute, and he was, during the existence of such life estate, entitled to the possession and all the benefits thereof. But when the life estate terminated, if he would claim as against the reversioner the protection of the limitation laws, it must be by an *adverse* possession, continued for the length of time prescribed by the ordinary limitation laws. The language of Judge Strong in the case of *Bigelow v. Forrest* hereinbefore cited, though not based upon the same question as here presented, is nevertheless forcible in its application to it. He says: "Was he therefore barred from maintaining the ejectment? The land was not seized or condemned for any act of his. He had no interest in it when it was declared forfeited. He could not have been heard in opposition to the decree of forfeiture. That proceeding was wholly *inter alias partes*. If therefore he is not at liberty to assert his claim, he is denied the right to his property without trial, without any procedure in due course of law, and the practical effect of the bar is to assure to the purchaser at the marshal's sale the enjoyment of the property after his right has expired, and to give him by estoppel a greater estate than he purchased. No construction of the act of congress that works such results can be accepted." For these reasons the judgment must be affirmed.

All the Justices concurring.