H. O. BIRD *et ux.* V. J. H. WHETSTONE.

No. 14,105.    (80 Pac. 942.)

SYLLABUS BY THE COURT.

REAL ESTATE—*Title by Adverse Possession.* Where the owner of vacant and unimproved land conveys it to another the grantee, by reason of his legal title, will be deemed to be in possession thereof, and the grantor may subsequently acquire a new title thereto by a new and independent possession which is adverse, notorious, continuous and exclusive for more than fifteen years.

Error from Franklin district court; W. B. PLEAS-ANT, judge *pro tem.* Opinion filed May 6, 1905. Affirmed.

STATEMENT.

ACTION of ejectment by H. O. Bird and R. E. Bird to recover from J. H. Whetstone five acres of land in Franklin county. Upon testimony produced the court made findings of fact, and those pertinent in this consideration are as follow:

"(1) Defendant, Whetstone, was originally the owner of the land in controversy, and conveyed it as a gift by warranty deed to his niece, Hannah Dryden, about the 1st day of August, 1874. The land was then, and till 1879 or 1880, raw prairie that had never been cultivated or improved, and was unfenced. This deed was recorded in the office of the register of deeds of Franklin county, Kansas, on May 13, 1875.

"(2) Hannah Dryden died April 17, 1899, without ever making any conveyance of this land. . . ."

[Then follow findings as to other proceedings in regard to the land which are not now material, and also as to the relationship of certain parties to Hannah Dryden.]

"(5) In 1880 this land adjoined a tract of about sixty acres belonging to Whetstone, which other land surrounded this on three sides, and Whetstone, desiring to enclose his said land, erected a fence around it up to the outside corners of this land, and there joined his fence to a fence that ran along the outer line of this land, thus enclosing this and his land all in one

field.  This he did (1) for convenience in fencing and farming his land, and (2) because he made the deed to his niece, who was then a young woman, as a gift, and he wished her to build upon it so that some day she might have it for a home.  She never took actual possession of it, and never improved it or fenced it, or did anything in the way of looking after it or taking charge of it, and he thought that no one else had any interest in it and he would just fence it up and keep it. He set the land out in apple trees and grew a good, bearing orchard upon it.  From 1880 until this time he has had exclusive and continuous, uninterrupted possession of said land.  This was at all times an open and visible possession.  Hannah Dryden resided for three or four years after the making of the deed in Whetstone's family, and after that in Wilson county, Kansas, where she died.  It is agreed upon the trial that the tract of land in dispute contains five acres, and that Hannah Dryden died April 17, 1899.  The orchard is now pretty well run down.  The rental value of the land in controversy from the time of commencement of this action to time of trial is $60."

Upon the facts found and stated the court made the following conclusions of law:

"(1)   That the proceedings in case No. 6392 are not *res judicata* in this action against either of the plaintiffs, and are no bar to their recovery in this action.

"(2)   That the defendant's possession of the land was such as to cause the statute of limitations to run in his favor, and that plaintiffs' action is barred by lapse of time.

"(3)   That defendant should have judgment for costs, and that his title be quieted."

Judgment was entered accordingly.

*Benson & Harris,* for plaintiffs in error.

*William H. Clark,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.:  The evidence in the case was not preserved, and the rights of the parties must, therefore, be determined by the findings made by the trial

court.   Whetstone bases his claim to the land on adverse possession, held for a longer time than is necessary to give title by limitation.   He enclosed and improved the land in 1880, and since that time has been in the exclusive and continuous possession of it.   It is contended that the possession was not such as would ripen into a title, and that when he conveyed the land to Hannah Dryden his continued possession was subordinate to her rights and indicated that he was holding possession for a temporary purpose only, as her tenant at sufferance.   It has been repeatedly held that an owner who conveys land and continues in possession of it after his conveyance is recorded is deemed to be holding under his grantee, and in subservience to the record title.   (*McNeil v. Jordan,* 28 Kan. 7; *Sellers v. Crossan,* 52 id. 570, 35 Pac. 205; *Hockman v. Thuma,* 68 id. 519, 75 Pac. 486.)   In such a case the statute of limitations would not begin to run until the presumption of holding in subserviency to the title of the grantee was in some way overcome.

Under the facts found, however, it cannot be said that Whetstone remained in possession of the land after his deed was made and recorded.   The land was not fenced, cultivated or otherwise improved until 1880.   When Whetstone conveyed it to his niece it was unoccupied, and his possession was only constructive. His conveyance of the vacant land transferred both title and possession to his grantee.   In such a case the possession is deemed to follow the title.   (*Gildehaus v. Whiting,* 39 Kan. 706, 18 Pac. 916; 15 Cyc. 36.)   Such possession as Whetstone had was therefore interrupted from 1874 until 1880, during which time it must be regarded as having been in his grantee.   When he enclosed the land, in 1880, and cultivated and improved it, his possession, then taken, was wholly independent of the constructive possession that he held at the time of the conveyance to his niece.

The supreme court of Nebraska had under consid-

eration a case involving the transfer of title to vacant lands which the grantor subsequently took actual possession of, and on which he made permanent improvements.  The court said:

"The holder of the legal title to vacant lands is deemed to be in possession thereof.  (*Troxell v. Johnson,* 52 Neb. 46, 71 N. W. 968.)  Hence, when Horbach executed and delivered a deed to Boyd which conveyed the legal title, possession went with it.  The land being vacant, the same act that devested Horbach's title and created a title in Boyd terminated Horbach's possession, and put Boyd in possession.  Such possession, as we understand the defendant's claim, continued for four years.  Then, in 1861, as defendant offered to prove, Horbach enclosed the land and other tracts with a substantial fence; he and his lessees cultivated it; he publicly and notoriously claimed to own it, and was named as owner on maps and plats in general circulation; the land was assessed as his; he conveyed it, and he and his grantees and lessees put houses upon it. This is not a continuance of the possession existing prior to the conveyance.  It is a subsequent entry, creating a new and independent possession, and giving rise to a new and original title."  (*Horbach v. Boyd,* 64 Neb. 129, 132, 89 N. W. 644.)

Whetstone was out of possession of the land for about six years, and the possession taken in 1880 and exclusively held for about twenty years before this action was begun is to be regarded as a distinct and independent possession, and as the foundation of a new and original title.  As he did not continue in possession after conveyance the rule invoked as to the kind of disclaimer necessary to change a permissive possession into an adverse one has no application.  His occupancy and improvements were an open assertion of a claim of right in the land, and were of such a character as to give notice to Hannah Dryden and others interested in the land of an intention to appropriate it.  He entered upon the land with the intention "to keep it" for himself, and the fact that he then had

28—71 KAN.

no title or color of title did not prevent him from acquiring the land by adverse possession.

"Possession of land by an adverse occupant for more than fifteen years, which is actual, notorious, continuous, and exclusive, will give title thereto, although such possession is entirely destitute of color of title." (*Pratt v. Ard,* 63 Kan. 182, 65 Pac. 255.)

The findings of fact sufficiently support the judgment which was rendered, and it is therefore affirmed.

All the Justices concurring.