CLAUDE F. BLUMER v. IOWA RAILROAD LAND COMPANY Appellant.

**Public lands:** RAILWAY GRANT: ADVERSE POSSESSION. Land granted 1 to and earned by a railway company is subject to an adverse possession, even though not certified to the company by the government land department.

**Good faith possession.** The good faith possession of an entryman 2 of public land as against another claimant will be presumed, where he goes into possession under an approved application and with the advice of his counsel that he has the right to do so, and thereafter complies with the law in relation to cultivation; and this presumption will not be overcome by the fact that his previous application for the same land was cancelled.

**Limitation of actions.** The statute of limitations runs in favor of 3 an occupant of government land under an approved application, as against an adverse claimant, from the time he enters into possession under the application rather than from the time he becomes entitled to a patent.

*Appeal from Woodbury District Court.*— HON. J. F. OLIVER, Judge.

FRIDAY, NOVEMBER 17, 1905.

ACTION to quiet title. Decree as prayed, from which the defendant appeals.— *Affirmed.*

*Chas. A. Clark & Son* and *Wm. G. Clark,* for appellant.

*Lohr, Gardner & Lohr,* for appellee.

LADD, J.— The forty acres of land in controversy is located within the place limits of the grant for the benefit of the Dubuque & Sioux City Railroad Company, afterwards transferred to the Iowa Falls & Sioux City Railroad Company, under the act of Congress approved May 15, 1856. The road was completed prior to 1872, and, though this tract was included in the list certified to the State, approval was delayed by the assertion of title to it under the swamp land act until 1878. In 1883 John Carraher applied to the local land office at Des Moines to enter it under the timber culture act, but his application was rejected, owing to conflict with the grant to the railroad company, and the decision was affirmed by the Commissioner of the General Land Office in December of the same year. He then appealed to the Secretary of the Interior, by whom the previous decisions were approved June 17, 1891.

In the meantime the company had filed (1885) selections of land, including this, in the local land office, as inuring to it, under the grant, and these were accepted by the register and receiver and certified to the Commissioner, but under the practice of the department, could not be passed on until Carraher's appeal had been disposed of, and when reached in January, 1893, this land, through oversight or other cause, was omitted from the certification to the company. In 1888 Carraher presented a second application for the same land to the register and receiver, and procured the following receipt:

Timber Culture.

Receiver's Receipt No. 607.    Application No. 607.

Receiver's Office, Des Moines, Iowa.

May 31st, 1888.

Received of John Carraher the sum of nine dollars —— cents, being the amount of fee and compensation of

register and receiver for the entry of northeast of N. E. quarter of section one in township 89 of range 46, under the first section of the act of Congress approved June 14th, 1878, entitled " An act to amend an act entitled ' An act to encourage the growth of timber on the Western prairies.' "

$9.00.        M. V. McHENRY, Receiver.

This was forwarded to him by his attorney, accompanied by a letter:

Sioux City, Iowa, June 2, 1888.

Mr. John Carraher — My Dear Sir:  I have the pleasure of handing you herewith your timber culture entry receiver's receipt No. 607 for N. E. ¼ of N. E. ¼, 1, 89, 46.

Respectfully,        GEO. W. WAKEFIELD.

P. S.  You can take possession and proceed to comply with the timber culture laws.

He proceeded at once to comply with the timber culture act, and was in possession of the land from that time until his death in 1901, since which time plaintiff, to whom Carraher conveyed it a few days before he died, has been in possession.  Some question is made as to the character of this possession, but, without reviewing the evidence, it is sufficient to say that we think it such as is required to constitute adverse possession, provided it shall be construed to have been in good faith and under claim of right or color of title.  The defendant acquired whatever interest in the land the railroad company had, or might obtain, in 1887, and the correspondence between the parties indicates that it had overlooked its claim thereto, and did not receive paper title until January, 1903. This action was begun October 23, 1902, and the ultimate issue to be determined is whether defendant has lost title through the adverse possession of the plaintiff and his grantor.  It is conceded that the grant to the railroad company was *in præsenti,* and, as the company had earned the land and all contests pending before the Land Department had been disposed of prior to 1892, its ownership for the ten

1. PUBLIC LANDS: railway grant: adverse possession.

years preceding the commencement of the action was such as to be subject to the doctrine of adverse possession. *Deseret Salt Co. v. Tarpey,* 142 U. S. 241 (12 Sup. Ct. 158, 55 L. Ed. 999); *Toltec Ranch Co. v. Cook,* 191 U. S. 532 (24 Sup. Ct. 166, 48 L. Ed. 291); *Iowa Railroad Land Co. v. Fehring,* 126 Iowa, 1, and cases cited.

Some claim is made that this case is distinguishable from those first cited, in that before certification in 1903 the Land Department ascertained that the tract was not within six miles of mineral claims, and therefore asserted active jurisdiction in determining whether it was within an exception contained in the grant. This was a mere matter of detail in connection with the certification, and did not tend to show that the company had not acquired ownership under the grant thirty years previous, or that it might not have obtained the certificate at any time after 1891. On the contrary, the investigation resulted in confirming such ownership during this long period. As observed in *Barden v. N. P. R. Co.,* 154 U. S. 288 (14 Sup. Ct. 1030, 38 L. Ed. 992): " The delay of the government in issuing a patent does not affect the power of the company to assert in the meantime, by possessory action, its rights to lands which are in fact nonmineral." This was a direct action by the railroad company to recover the lands under the grant, and is not otherwise in point. All held in *St. P., M. & M. R. Co. v. Olson,* 87 Minn. 117 (91 N. W. Rep. 294), was that in computing the period of the statute of limitations the time a contest between the parties was pending before the Land Department of the government should be excluded. The act of Congress approved March 3, 1887, providing for the adjustment of railroad grants, did not purport to disturb the ownership of lands already earned, and, moreover, there was no showing that any readjustment of this grant was at-tempted. The case is within the rule of the decisions cited, and the defendant's title has been such as to be subject to adverse possession at least since 1891.

II.   Counsel for appellant first contend that the pos-
sion of Carraher was not in good faith.   At the time he
filed his last application under the tree culture act the appeal

2. GOOD FAITH          from the rejection of his first application had
POSSESSION.          been pending nearly five years.   His second
application was received in 1888, and not until three years
thereafter did the Secretary of the Interior affirm the deci-
sions rejecting the first.   At that time the filing of the
second application was ordered to be canceled, but whether
Carraher was advised of this is not disclosed.   Not having
been accorded a hearing nor given any previous notice of the
department's intention to cancel his entry, it is not to be in-
ferred that he was subsequently informed of what had been
done.   See *Wilbur v. Ry. Co.,* 116 Iowa, 65, and cases cited.
He subdued the soil and undertook to plant and cultivate
the trees as required by the act of Congress, and there is no
ground for saying that he was not acting in good faith, save
this knowledge of the adverse decision on his first applica-
tion in 1891.   He was not claiming under that, but by
virtue of the receipt which had been obtained in 1888, and
under which, for all that appears, he supposed he might ac-
quire the land.   That he was mistaken can make no differ-
ence, so long as he honestly believed, though mistakenly, that
he had the right to acquire the land under the tree culture
act.   He had the assurance of his attorney, who was a judge
of the district court when the letter was written, and this,
with the acceptance of his application at the local land office,
might well have convinced him of such right.

The entire doctrine of adverse possession is based upon
the existence of defective titles; for where titles are good
there is no occasion for invoking it.   The case differs from
*Litchfield v. Sewell,* 97 Iowa, 247, in that there defendant
knew he had no right to the land, while here the fair infer-
ence to be drawn from the evidence is that Carraher sup-
posed he had been accorded the right to earn it under the
tree culture act.   See *Coleman v. Billings,* 89 Ill. 183; *Bar-*

*rett v. Stradl,* 73 Wis. 385 (41 N. W. Rep. 439, 9 Am. St. Rep. 795). Good faith is to be presumed, and we think the evidence insufficient to justify a finding to the contrary.

III. The plaintiff's claim of right, for the time required to acquire title under the timber culture act at least, was subservient to that of the government, and since then

3. LIMITATION OF ACTIONS.

the period of the statute of limitations has not run. The controlling question, then, is whether the statutory period shall be computed from the time possession was taken under the receiver's receipt or from the time he might have so complied with the laws which entitle the applicant to a patent. In other words, is the claim of right sufficient if against all, save the government, or must the claim be that of entire ownership, and therefore against the world? The possession of Carraher was taken for the purpose of divesting the government of title by complying with the provisions of the timber culture act, and was necessarily hostile to all others. In effect, he conceded ownership by the government, which, unless he executed his purpose, would continue. It was an admission that the United States, rather than himself, held the fee and was entitled to retain it for the eight years required by the law for him to earn it. See act of Congress approved June 14, 1878. His first occupancy was under the second entry, in 1888, at which time the land had been earned by the railroad company, and, as the grant was *in præsenti,* it or its grantee could have maintained ejectment against him at any time within the period of limitation. When, if ever, did this period, which is ten years in this State, begin to run? If after Carraher might have earned and acquired title under the timber culture act, then the period had not expired when this action was begun; if when he entered into possession under the receiver's receipt then it has run, and plaintiff's title should be quieted. In *Cole v. Des Moines Valley R. Co.,* 76 Iowa, 185, title was quieted in the plaintiff, though his entry had been canceled, but he had been

in adverse possession more than ten years subsequent to the lapse of time within which he might have earned the homestead. The same is true of *Wilber v. C. R. & M. R. R. Co.,* 116 Iowa, 65.

The Supreme Court of Nebraska, without deciding that the running of the statute might not begin sooner, held, in *Carroll v. Patrick,* 23 Neb. 834 (37 N. W. Rep. 671), that "a land officer's certificate, therefore, under our statute, is color of title. As between individuals, the statute of limitations begins to run from the time the party entering the land did all that was required of him to perfect his purchase." At such time the claim is that of ownership and apparently all lacking is the paper title. It has ceased to be subservient to and has become adverse to the government. See *Chicago, R. I. & P. R. Co. v. Allfree,* 64 Iowa, 500. If, in fact, earned, the government retains but the naked legal title, and the claimant has become the real owner. The land is then segregated from the public domain, and has become private property. *Durham v. Hussman,* 88 Iowa, 29; *Nichols v. Council,* 51 Ark. 26 (9 S. W. Rep. 305, 14 Am. St. Rep. 20); *Cavender v. Smith,* 56 Am. Dec. 541; *Cady v. Eighmey,* 54 Iowa, 615; *Steele v. Boley,* 6 Utah, 308 (22 Pac. Rep. 311); *Wirth v. Branson,* 98 U. S. 118 (25 L. Ed. 86); *Stark v. Starr,* 6 *Wall.* 402 (18 L. Ed. 925). But it is not essential that the land be actually earned in compliance with the law. It is enough that the party in possession in good faith so believes and asserts claim of ownership against the government, as well as all others.

Up to this point we apprehend there can be no controversy, although language may be found in some decisions indicating that the legal title must have passed from the government. See *Arnold v. Woodward,* 14 Colo. 164 (23 Pac. Rep. 444); *Gibson v. Chonteau,* 80 U. S. 92 (20 L. Ed. 534). But the claim of one who enters land with the purpose of acquiring title from the government by compliance with its laws is quite as hostile, as though patent had been

issued, to all others, though subservient to the government. And the weight of authority is to the effect that the claim of right may be subservient to the government if hostile to all others. *Clemens v. Runckel,* 34 Mo. 41 (84 Am. Dec. 69); *Mather v. Walsh,* 107 Mo. 121 (17 S. W. Rep. 755); *Moore v. Brownfield,* 7 Wash. 23 (34 Pac. Rep. 199); *Lord v. Sawyer,* 57 Cal. 65; *Alabama State Land Co. v. Kyle,* 99 Ala. 474, (13 South. Rep. 43); *Francoeur v. Newhouse* (C. C.) 43 Fed. 236; *Northern Pacific R. Co. v. Kranich* (C. C.), 52 Fed. 911. See *Railway Co. v. Townsend,* 84 Minn. 152 (86 N. W. Rep. 1007, 87 Am. St. Rep. 342).

The principle is well stated in the first-mentioned case: " The defendant, and those under whom he claims, did not enter or hold under the plaintiff. They did not recognize his title. They had no privity with him. They do not appear even to have known of the existence of his title. They recognized a title in another person, 'the United States,' who was supposed to be the proprietors, and as to the United States their possession was not hostile, but they did expect to acquire the title of the United States, believing themselves to have right of pre-emption to the exclusion of all other persons, and a present right to the use and possession of the land. The defendant has the actual possession, within the meaning of the statute of limitations, with a claim, not of absolute title, but of a right which was adverse to all other persons."

The only decision we have discovered to the contrary is *Altschul v. O'Neill,* 35 Or. 202 (58 Pac. Rep. 95). But there the company under which plaintiff held became entitled to the land in 1886, and, though defendant had occupied it since 1866, he had made no effort to acquire the land from the government as a homestead until 1894. His application was then rejected by the officers of the local land office, and their decision later confirmed on appeal. Suit was begun in 1898, and the statute of limitations of ten years pleaded in bar. It is manifest that defendant was a

mere trespasser throughout.  His attitude was entirely different from that of a party whose application has been received by the officers of the government, and who has entered into possession in good faith and continues therein in what he supposes to be conformity with the laws of Congress.  Nevertheless, the court delivered an opinion exhibiting extended research to the effect that a claim of right upon which adverse possession may be based must be against the whole world, including the government.  No doubt the judges have made all the statements attributed to them in this opinion, but it is to be said in extenuation that each had application to the particular facts of the case in hand, and that in none, save those the court declined to follow, was the question as to whether the fact that the claim was subservient to the government involved.  Indeed, the character of the claim under a government entry does not appear to have been given due consideration.  If effective, it is exclusive of others.  It is an assertion of right to the land, which, if well founded, must defeat the claims of all others.  It involves a right of possession as absolute as though the party owned the title.  It purports to exclude every one from its enjoyment, and even as against the government to assert the right to divest its title by compliance with the law.  The statute of limitations never runs in favor of or against the government, and we are inclined to hold, in harmony with the weight of authority, that the relation of the citizen's claim to the government's title ought not to interfere with the running of the statute against all others, and that the period should be computed from the time Carraher entered into possession under the receiver's receipt.

The decree was right, and is *affirmed.*