Fear v. Barwise.

No. 19,039.

S. T. FEAR, *Appellee,* V. ASA BARWISE et al. (H. E. SADLER, *Appellant*).

SYLLABUS BY THE COURT.

1. SALE—*School Lands—Insufficient Notice of Forfeiture.* An attempted forfeiture in 1895 of a school-land sale was evidenced *prima facie* by the entry "Forfeited See Files," but the testimony showed that the notice was not. addressed to any one then shown by the records in the county clerk's office to have any interest in the land. *Held,* that such notice was insufficient and such attempted forfeiture void.

2. SAME—*Adverse Possession—When Hostile Adverse Possession Begins.* One taking possession of school land, a sale of which is supposed by him to have been forfeited, erecting a house, making other improvements, and continuing to live therein for years, thereby begins a hostile adverse possession as against the former purchaser, although he does not for a year or more enter into a contract with the state for the purchase of the land.

3. ADVERSE POSSESSION—*What Constitutes Adverse Possession.* Possession to be adverse need not be under color of title, but must be with claim of right. Claim of right, claim of title, claim of ownership, and hostile possession, are different expressions used to indicate the intention of the possessor to appropriate the land to his own use regardless of his rival's claims.

Appeal from Elk district court; GRANVILLE P. AIKMAN, judge. Opinion filed October 10, 1914. Affirmed.

*J. B. Tomlinson,* and *Charles D. Shukers,* both of Independence, for the appellant.

*A. F. Sims,* of Howard, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued to quiet title to an 80-acre tract of school land. The defendant interposed a general denial and a cross-petition in ejectment, to which the plaintiff replied by setting up the forfeiture act of 1907 (Gen. Stat. 1909, § 7695) and the statute of limitations. The plaintiff prevailed and the defendant appeals. The plaintiff claims under a second purchaser after the first sale had been canceled. The defendant is the successor in title to T. J. Lewis, who purchased the land in 1882. Default was made in 1889. The record of school-land sales has the entry "Forfeited See Files." Also a memorandum that a notice to pay up in 30 days was sent to T. J. Lewis January 24, 1895, and that the land was sold January, 1897. In the files was found a letter from the auditor of state, January 10, 1907, stating that his records showed no forfeiture and requesting a report if there had been a forfeiture. Also a letter of January 29, 1895, from the county clerk to T. J. Lewis or S. D. Chestnut that unless the back interest should be paid up in 30 days a notice of forfeiture would be placed in the hands of the sheriff. Also a notice of forfeiture addressed to T. J. Lewis and all others in any way interested in the property. The former sheriff testified that the notice came into his hands March 15, 1895, addressed to T. J. Lewis, S. D. Chestnut, Thomas M. Barker, C. E. Barwise, and E. J. Newcomb; that he made personal service on Lewis, the others not being found in the county. He would not say he did not post notices. If the law required it, he did. J. T. Richards testified that he lived within a mile of the land when the sheriff came out to post notices about March, 1895; that the sheriff inquired where Lewis was; that notice was posted on the

land on the fence post. The transfer record in the clerk's office showed that Lewis and Chestnut conveyed to Thomas M. Barker in 1887, Barker to Barwise, August, 1887, Barwise to Newcomb, June, 1889, and Newcomb to Hall, May, 1890. Hence the notice was not addressed to any one who was then shown by the record to have any interest in the land. It is claimed that for this reason the attempted forfeiture was void. The statute then in force (Gen. Stat. 1901, § 6356) required that the notice be issued to the purchaser, notifying him that if the arearage be not paid within 60 days such purchaser and all persons claiming under him would forfeit all right and interest in and to the land under such purchase. The sheriff was required to serve this by delivering a copy to such purchaser if found in the county, and also to all persons in possession of the land, and if no person was in possession then by posting up in a conspicuous place in the office of the county clerk. It has been held that when a purchaser assigns his certificate and the assignment is entered on the record in the county clerk's office the assignee is deemed the purchaser within the statutes providing for forfeiture proceedings, and that where the notice is issued to a person who is shown by the record in the county clerk's office to have assigned his interests to another and no steps are taken to give notice to the assignee or any one holding under him the forfeiture is void. (*Roll v. Nation*, 82 Kan. 675, 109 Pac. 392.) Also, that when the land is in actual cultivation by the tenant of the assignee, no one residing on the land, service of notice on such tenant is essential, and that a return that the notice was posted in the county clerk's office is insufficient, the statute requiring that it be posted in a conspicuous place. (*Knott v. Tade,* 58 Kan. 94, 48 Pac. 561.) When the certificate has been assigned to two persons jointly both are deemed purchasers. To justify constructive service the return must show that the purchaser can not be found and that no person is in

possession of the land. (*Furniture Co. v. Spencer*, 59 Kan. 168, 52 Pac. 425.) A return that the sheriff found no one in possession is not a finding that no one was in possession and is insufficient to base a forfeiture on. (*True v. Brandt*, 72 Kan. 502, 83 Pac. 826.) A strict compliance with the requirements of the statute has been held to be necessary. (*Phares v. Gleason*, 73 Kan. 604, 85 Pac. 572. See, also, *Spencer v. Smith*, 74 Kan. 142, 85 Pac. 537.)

Chapter 373 of the Laws of 1907 (Gen. Stat. 1909, §§ 7692-7696) minimizes the strictness required in former acts by making entries upon the record indicating forfeiture *prima facie* evidence that compliance has been had. Also, that the return of the sheriff shall not be held insufficient because of the omission of any recital required by law, and that a return that service was made by posting a copy of the notice in the office of the county clerk shall be *prima facie* evidence that persons on whom the notice was served could not be found in the county, and that no one was in possession of the land, and that any statement of such return other than that the notice was posted in such office shall not destroy the *prima facie* effect unless such additional matter affirmatively shows that legal service was not made. Section 3 (§ 7694) provides that when a purchaser defaulted and abandoned the land and thereafter notice was served by posting a copy in the office of the county clerk and the right and interest of the purchaser was declared forfeited and the land was subsequently sold to a new purchaser by whom or by whose assignee it was taken possession of and improved, such notice shall be held a sufficient notice to the first purchaser of his default. This section has been held void as beyond the power of the legislature. (*Petersilie v. McLachlin*, 80 Kan. 176, 101 Pac. 1014; *Foster v. Harrington*, 80 Kan. 797, 101 Pac. 1013.)

In *Jones v. Hickey*, 80 Kan. 109, 102 Pac. 247, the plaintiff, after proving a *prima facie* case, offered in

evidence the records of the county clerk showing an attempted forfeiture. The return was defective in failing to state that no one was in possession, but the plaintiff supplied the omission by offering oral proof that the land had never been occupied, and it was held that he thereby established a *prima facie* showing of forfeiture, which defeated his right to recover. Here the testimony showed that personal service was made on Lewis, who had no interest in the land; that no record of notice was found for Lemmon, or Hall, or J. M. Barger. The latter appeared to have held under a written lease from Lemmon, and Richards testified that in going on the land he went through a gap in the fence, which would indicate that the land was not only leased but fenced, and therefore under some sort of occupation and control. As the testimony showed the facts about the notice, we find nothing in the act of 1907 which precludes the forfeiture from being void in accordance with the decisions already referred to.

Richards, under whom the plaintiff claims, testified that he lived within a mile of this land when the sheriff came out to post notices about March, 1895; that he went into possession immediately after the 60 days' limit after the notices expired May, 1895; that he went on the land in a covered wagon, through a gap in the fence, and built a shack the next day, and lived there until he sold the land, seven years before the trial. "Hustled right over after the 60 days expired. Fence was down. Went right in and built a shack and was living in it the next day. Broke out a little, about five acres, that summer, and put it in millet. Wanted to have it ready to put in in the spring. Did not do anything about getting the title for quite a while after I went on the land. Could not tell how long. After I had been on there a while I circulated petitions to have it put on the market and appraised so I could buy it. Guess December, 1897, is when I proved up on it."

J. M. Barger testified that when Richards moved on the land in 1895 he, Barger, had it rented from a man

named Lemmon under a written lease. That after Richards took possession he dispossessed Barger, who complained to Lemmon, who finally canceled Barger's note which he had given for rent.

The defendant contends that as the plaintiff's grantor did not purchase the land until December, 1897, his possession before that time was not adverse or based upon a claim of right in himself, and that mere occupancy without claim of right is not sufficient to start the statute of limitations running.

It is settled that possession to be adverse need not be under color of title (*Goodwin v. Nichols,* 44 Kan. 22, 23 Pac. 957; *Anderson v. Burnham,* 52 Kan. 454, 34 Pac. 1056; *Guinn v. Spillman,* 52 Kan. 496, 35 Pac. 13; *Pratt v. Ard,* 63 Kan. 182, 65 Pac. 255), but the defendant argues that it is essential that the possession be under claim of right. Claim of right, claim of title, claim of ownership, and hostile possession are different expressions used to indicate the intention of the possessor to appropriate the land to his own use without regard to any claim his rival may advance. It is not necessary that he should expressly declare his intentions, but if the character of his possession is such that a claim of ownership may be inferred therefrom and is open and notorious, it is hostile and under claim of right. Color of title has reference to something which has the appearance or gives the semblance of title but is not such in fact. It has been termed "apparent right." (*Newlin v. Rogers,* 6 Kan. App. 910, 51 Pac. 315; 2 Words and Phrases, p. 1264; 1 R. C. L., pp. 703-705, 711; 2 Enc. L. & P., 388-395; 1 Cyc., 1028.)

In *Goodwin v. Nichols,* 44 Kan. 22, 23 Pac. 957, it was said:

"He entered into possession under a claim of ownership, and not as mortgagee or the trustee of anyone. He continued in the actual, visible and exclusive possession, under claim of title, . . . —a period of nearly 23 years—paying the taxes and making valuable

improvements thereon as owner. A title by prescription arises in the adverse occupant at the end of 15 years, if the owner labors under no disability." (p. 29.)

In *Anderson v. Burnham,* 52 Kan. 454, 34 Pac. 1056, after referring to the former decisions that a mere trespasser without color or right of title who has been in actual possession for 15 years, claiming the title, becomes the owner by virtue of the statute of limitations, it was said:

"It is the holding of the notorious and exclusive possession of the land in hostility to the rights of the owner which gives the title, and not any mere instrument or paper under which claim is made. . . . The difference between title acquired by adverse occupancy under color of title and without such color is, that under the former the color of title gives character to the possession, and gives rise to the presumption that the claimant intends the entry shall be coextensive with the description in the deed, while under the latter the title will only be coextensive with the actual, visible and continued occupancy." (p. 460.)

It has been held that possession must be hostile in order to start the statute running. (*Dewey v. McLain,* 7 Kan. 126, 132; *Guilderhaus v. Whiting,* 39 Kan. 706, 711, 18 Pac. 916.) In *Bird v. Whetstone,* 71 Kan. 430, 80 Pac. 942, it was said:

"He entered upon the land with the intention 'to keep it' for himself, and the fact that he then had no title or color of title did not prevent him from acquiring the land by adverse possession." (p. 433.)

See authorities cited in *Freeman v. Funk,* 85 Kan. 473, 117 Pac. 1024.

We agree therefore with the defendant that for the possession to be such as to start the statute running it must be accompanied with a claim of title or ownership as already defined.

It is argued, however, that as the sale had been forfeited and the property belonged to the state when Richards took possession, and in a year or two he entered into a contract with the state for its purchase, his

possession was neither hostile nor under claim of right or title, but in recognition of the right and title of the state. But we are forced to the conclusion that so far as any claim of Lewis or his grantees is concerned such possession was to all intents hostile and under claim of right and ownership. Richards knew that it was school land, that it had been purchased, and that the sheriff claimed to have served notice of forfeiture which would become effective in 60 days, at the expiration of which time Richards promptly moved upon the land, built some sort of a house, and continued for years to live there, improving and occupying the land to all intents as an owner against any other party except the state. In *Pratt v. Ard,* 63 Kan. 182, 65 Pac. 255, the land belonged to the government, and it was argued that the acts of building and improving, if good for anything, were sufficient only to start the statute running as to the land actually occupied, but it was said that these acts were an assertion of title to the entire tract indicated by the boundaries marked.    (p. 185.)

"And even where the statute does not run against the government, one may acquire rights in public lands by adverse occupancy against all third persons; and this is true even though the claimant admits the government's ownership; in other words, the claimant's possession may be adverse without being hostile to the government."    (1 R. C. L. p. 734.)

In *Hayes v. Martin,* 45 Cal. 559, it was held that one who relies on title or adverse possession of land included in a Mexican grant need not show that he claimed adversely to the United States, but it is sufficient if he claimed adversely to the plaintiff's title. In *Blumer v. Land Co.,* 129 Iowa, 32, 105 N. W. 342, 113 Am. St. Rep. 444 (affirmed 206 U. S. 482, 27 Sup. Ct. Rep. 769, 51 L. Ed. 1148), a similar conclusion was reached, the question being thus stated:

"In other words, is the claim of right sufficient if against all, save the government, or must the claim be that of entire ownership and therefore against the world?"    (p. 37.)

At the close of the opinion it was said:

"It purports to exclude every one from its enjoyment, and even as against the government to assert the right to divest its title by compliance with the law." (p. 40.)

In *Maas v. Burdetzke,* 93 Minn. 295, 101 N. W. 182, it was held that one who takes possession of land in the erroneous belief that it is public land, with the intention of holding it and claiming it under the homestead law, may acquire title under the law as against the true owner. An analogous decision was rendered in *Clemens v. Runckel,* 34 Mo. 41, 84 Am. Dec. 69. In *Sweeney v. M'Culloch,* 3 Watt's (Pa.) 345, it was held that one who without title or color of title entered upon unseated land which had been surveyed and patented to another, acquired by 21 years' possession a right only to so much as he actually cultivated or enclosed. In *Smith v. Jones,* 103 Tex. 632, 132 S. W. 469, 31 L. R. A., n. s., 353, it was decided that the mere fact that one holds land in subordination to the state is not necessarily inconsistent with the conception of holding it in hostility to others if openly disputing their claims of title while the possessor is pursuing a supposed right to acquire title from the state, though a mere holding under the belief that it is the state's, and with the purpose to acquire it lawfully in the future, does not make the possession hostile to the claim of an owner of whose existence the possessor is ignorant. In *Johnson v. Conner,* 48 Wash. 431, 93 Pac. 914, it was held that one who enters upon land in good faith supposing it to be government land with a view of acquiring title may upon discovering his mistake proceed to hold adversely to the actual owner so as to acquire title by such possession for 10 years.

The defendant, having together with his grantor been in adverse possession for more than 15 years, was entitled to recover, and for that reason the judgment is affirmed.