P. M. CLARK, Appellee, v. PLINY SEXTON *et al.*, Appellants.

Tax Title: POSSESSION: LIMITATION: EVIDENCE. The constructive
1  possession of a tax-title owner must yield to the actual possession of the owner of the fee, and the owner's possession need not be such as to make it adverse under the general statute of limitations. Evidence considered and held to show possession by the owner for more than five years and that the tax title was barred.

Title of Fee Owner: ATTACK UPON. The holder of a tax title can-
2  not attack the fee-title owner's conveyance as having been procured by fraud or without consideration.

Adverse Possession: GOOD FAITH: EVIDENCE. In an action to quiet
3  title by the fee owner against the tax-title owner, the evidence of plaintiff's good faith possession is considered and held sufficient to support his subsequent plea of adverse possession.

*Appeal from Warren District Court.*—HON. A. W. WILKIN-SON, Judge.

THURSDAY, JANUARY 21, 1904.

SUIT in equity to quiet plaintiff's title to a certain forty acres of land in Warren county. Defendant Sexton claims under a tax title acquired in the year 1867. The other de-

fendants were in possession of the land under Sexton, having gone into the occupancy of the same in April of the year 1900. Plaintiff relies upon the short five-year statute of limitations barring actions for assertion of tax titles; and upon the general ten-year statute of limitations, and adverse possession. The case was tried to the court on these and some other issues, resulting in a decree for the plaintiff, and the defendants appeal.—*Affirmed.*

*A. A. McGarry* for appellants.

*Henderson & Berry* for appellee.

DEEMER, C. J.—Plaintiff acquired his title through certain mesne conveyances from the general government in July of the year 1887, and immediately went into possession of the land, and continued to occupy it until dispossessed by the defendants in April of the year 1900. He did not live upon the land, it is true, but made such use of it as owners usually do of premises upon which they do not reside. In April of the year 1894 he caused the entire tract to be fenced, and has generally paid the taxes thereon. Plaintiff obtained title by a quitclaim deed from the Minnesota Land & Debenture Company, a corporation engaged in railway construction; and that company obtained its title by deed of bargain and sale from Oscar Springer and Ann E. Springer. The Springers were the widow and heir at law of one Harlan M. Springer, who owned the land at the time it was sold for taxes in the year 1867. The Springers, mother and son, used the land more or less from the year 1870 down to the time plaintiff took possession thereof, but their possession was not at all times hostile to Sexton. Indeed, they distinctly recognized Sexton's title in the year 1885, for they purchased the land at tax sale and allowed Sexton to redeem from the sale.

There are but two questions in the case, and these are: First. Is defendant Sexton's claim under his tax deed

barred under either the five or ten year statute.    There is considerable doubt regarding the character of the possession held by the Springers after the execution of the tax deed and down to the

**1.** TAX title: possession: bar limitation: evidence.

time they purchased the land at tax sale.    The only evidence on the point comes from Oscar Springer, who said: "I cut some wood off this land a few years because I held certificate of sale to the land myself.    My father died in 1870, and I used wood off the land after father died.    He died August, 1870.    The land was not under fence.    My father cut wood off the land and I cut wood off the land while I held certificate of purchase and until it was redeemed by Sexton. After Mr. Sexton redeemed the land, I saw his agent.    Did not know the name of the man at the time, and do not now know what his name was.  Asked him to write to Sexton in regard to the land, and see if he would be willing to take the amount that he had paid as taxes, with interest, and let me have the land.    He did so, and informed me that Mr. Sexton would not make that kind of a contract.    He would not do anything but sell the land, and from that time I considered that I had no interest.    Did not want to buy the land, so quit using the wood there.    The land was sold to me in 1885, and Sexton redeemed it 1886." We have many times said that possession of land, in order to bar an action under a tax title, need not be such as is required to make it adverse, hostile, and exclusive under the general statute of limitations.    If it is such as would entitle the tax-title owner to an action against the occupant, who, of course, must be the fee-title owner, it is sufficient.    *Griffith's Ex'r v. Carter,* 64 Iowa, 193; *Barrett v. Love,* 48 Iowa, 103.    The constructive possession of the tax-title owner yields of course, to the actual possession of the owner, and the owner's possession need not be adverse.    Such possession in fact as would authorize the tax-title owner to maintain an action against the fee-title owner is all that is required to negative the tax-title owner's constructive possession, and to bar his action after the lapse of the five years.    We are constrained to hold

that the Springers' possession continued for more than five years after the issuance of the tax deed, and that the claim under the tax deed is barred.

Aside from this, plaintiff was in the actual, notorious, and hostile possession of the land from the year 1887, when he obtained his title immediately from the Springers, down to the year 1900, when he was dispossessed by the defendants. He held this possession under claim of right and color of title through his deed from the land and debenture company. This was a bar to defendants' action on their cross-bill under the general ten-year statute of limitations, unless it be for a matter to which we shall now give attention. It is alleged in the cross-bill filed by the defendant Sexton that plaintiff, with full knowledge of Sexton's rights in and to the land, fraudulently and in bad faith obtained title to the land from the Springers, well knowing that they had no interest in the property. It is further alleged that plaintiff obtained the conveyance from the Springers through false and fraudulent representations, and that he paid no consideration therefor, and that as a matter of fact the Springers held no title which they could convey. This defendant is in no position to plead fraud in procuring, or want of consideration, for the deed made by the Springers. They alone can complain of that. The transaction, even if fraudulent, was voidable, and not void; and, as Sexton did not acquire his title from them, but directly from the government, he is in no position to attack their deed for fraud. We are committed to the doctrine, however, that possession, to be adverse, must have been held in good faith by the claimant. If one knows that he has no title or claim, if his possession is merely wanton, his occupancy, no matter how long continued, will not ripen into a title. To hold otherwise would be to convert the statute of limitations into a cover for fraud, instead of giving to it proper application as a statute of repose. *Litchfield v. Sewell,* 97 Iowa, 247; *Smith v. Young,* 89 Iowa, 340

*2. TITLE of fee owner: attack upon.* [margin note]

Let us see, then, if plaintiff's possession was in good faith. Holding the record title under regular conveyances from the government, we must assume that such was the character of his possession until the contrary is shown. If the case stood alone on what transpired at the time plaintiff obtained his deed from the Springers, we should be inclined to hold that plaintiff had not established his claim of adverse possession; but plaintiff testified as follows: "I had a contract with the Minnesota Loan and Debenture Co. that I was to clear the title to the land. I saw Mr. Sexton at one time at his house in Palmyra, N. Y. It was the same season immediately after I got the land from the Springer heirs. It was in 1887 or 1888 that I told Mr. Sexton I bought the forty out there for the railway company, in which it was claimed he had a tax title. I wished to be entirely fair with him if he wanted anything, or whatever he wished to do. If he would say what he wished to do, I would be perfectly fair with him. Did not wish to take the slightest advantage in the world of him. Showed him the deed that I had from the Springer heirs. Had it with me. Mr. Sexton said he didn't know he had any land there. He said: 'I have no knowledge that I have any land there at all. If I find that I have, will write you and let you know what I will do. I will write my agent and have him ascertain, and will write you and let you know what I will do.' I never heard another word from Mr. Sexton. Never heard a word from Mr. Sexton about the land until I heard that Mr. Williamson had put a lock on the gate and turned some cattle out, and never heard any question about the land from anybody." This testimony is entirely uncontradicted. If true—and in view of the record we must so accept it—it shows that plaintiff was claiming the land in good faith, that Sexton was notified that he was claiming adversely under the Springer deed, and that, notwithstanding this notice, he did nothing, but allowed the plaintiff and the construction company to proceed with their improvements upon claim of right under

3. ADVERSE possession: good faith: evidence.

the deed, and to hold for possession for nearly thirteen years, before taking any action to remove them. This, to our minds, is sufficient to support the claim of adverse possession. There is no evidence that plaintiff knew of the character of the Springers' possession of the land, after the tax deed was issued, although we are inclined to believe that he was notified by the Springers when he received the deed from them, that they made no claim to the title. However, the defendant Sexton knew that plaintiff was making claim to title or to a right in the land under the deed from the Springers, and it was his duty to bring action within the time limited by the statute. This is the controlling feature on this branch of the case. It is this which distinguishes it from *Litchfield v. Sewell, supra,* and *Stillman v. Rosenberg,* 111 Iowa, 369.

It follows from what has been said that the decree must be and it is AFFIRMED.