LIZZIE McBRIDE, Appellee, v. NANCY C. CALDWELL ET AL., Appellants.

**Deeds:** ESTATE CONVEYED: ADVERSE POSSESSION. The granting clause of a deed which reads "do hereby sell and convey" is not a quitclaim, but purports to convey the whole estate, and a warranty therein of title by the grantors to their respective estates against all persons is not inconsistent with such granting clause; and not being a mere quitclaim affords color of title, possession under which is presumptively referable to the deed.

**Adverse possession:** CLAIM OF RIGHT: BAD FAITH: BURDEN OF PROOF. A claim of right to real property under color of title is

presumed to be in good faith, and the burden of establishing the contrary is on the party alleging bad faith.

**Same.** A grantee's claim of right under a deed from heirs may be in good faith even though he knew one of the heirs did not join therein; as where the circumstances were such as to induce the belief on his part that such heir had by reason of advancements no further interest in the property.

**Same:** EQUITABLE RELIEF: LACHES. A party, who, knowing all the facts and without excuse delays his action to establish an interest in real estate, until after the death of all the parties whose testimony might be available to the defendant, will be denied relief in equity on the ground of laches.

Deemer, J., concurring.

*Appeal from Mahaska District Court.*—HON. K. E. WILCOCKSON, Judge.

SATURDAY, FEBRUARY 20, 1909.

REHEARING DENIED SATURDAY, APRIL 10, 1909.

THIS is an action to establish plaintiff's alleged title in an undivided one-sixth of certain forty acres of land in Mahaska County. The defendant Nancy Caldwell is the widow, and the other defendants are the sons and only heirs at law, of Alexander Caldwell, who died in 1907. The claim of plaintiff is adverse to Alexander Caldwell, the ancestor of the defendants. There was a decree for plaintiff in the court below, and the defendants appeal.— *Reversed* and *remanded.*

*Irving C. Johnson* and *H. H. Sheriff,* for appellants.

*McCoy & McCoy* and *Jno. O. Malcolm,* for appellee.

EVANS, C. J.—The land in controversy was owned at the time of his death by one Sherman Canfield, who died intestate in 1865, and left surviving him his widow,

Jerusha Canfield, and three daughters. Sherman Canfield had had a son, Avery Canfield, who died in 1861, leaving a widow and the plaintiff as his only child. In January, 1867, Caldwell bought the forty acres in controversy from the widow and children of Sherman Canfield for the sum of $1,000, and received therefor a deed, of which the following is a copy:

Know all men by these presents that we, Jerusha Canfield, widow of Sherman Canfield, late of Mahaska County, Iowa, deceased; Candace Zaring, and Alexander Zaring, her husband; T. M. Linsley and F. W. Linsley, her husband; and Ester Caldwell, heirs at law of said Sherman Canfield, all residents of said Mahaska County, for the consideration of the sum of one thousand dollars in hand paid, do hereby sell and convey unto Alexander N. Caldwell of the same place, the following described land, situated and lying in Mahaska County and State of Iowa, to wit: The southeast quarter of the southwest quarter of Section No. twenty-eight (28), in Township No. seventy-five (75) North, of Range No. fourteen (14) West. Containing forty acres more or less. And we warrant the title to our respective estates therein to the said Alexander N. Caldwell against all persons whomsoever, that is to say, the said Jerusha Canfield to her dower estate as widow of said Sherman Canfield, deceased; and the said Candace Zaring and T. M. Linsley and Ester Caldwell, their several estates in full as children and heirs at law of the said Sherman Canfield. Executed this 21st day of January, A. D. 1867, and stamped with a U. S. Internal revenue stamp of ——. Jerusha Canfield, T. M. Linsley, F. W. Linsley, Candace Zaring, Alexander Zaring, Ester Caldwell. (Duly acknowledged.)

This deed was duly recorded on February 6, 1867. Caldwell went into immediate possession thereunder and maintained such possession for more than forty years, down to the time of his death. This suit was commenced in January, 1908, immediately after Caldwell's death. The defendants pleaded the statute of limitations, laches

and estoppel. The plaintiff contends that Caldwell's deed was a quitclaim deed, and conferred no color of title, and that his possession was not under a claim of right, and that, if under a claim of right, it was in bad faith, because he knew the plaintiff owned an undivided one-sixth of the property. The lower court seems to have proceeded upon the theory that Caldwell knew of the plaintiff's title to one-sixth of the property, and that his claim thereunder was therefore not in good faith, and the statute of limitations would not avail in his favor. This is the principal ground argued by appellee in support of the decree. A consideration of the case with reference to this point requires rather a detailed statement of much of the evidence. Caldwell was a son-in-law of Sherman Canfield; his first wife being the daughter Ester. She died, however, in 1874, leaving no children so far as appears from the record, and Caldwell remarried in 1875. The defendant Nancy Caldwell was the wife of such remarriage, and the other defendants are the children of such marriage. The plaintiff was born in 1859 at her grandfather's home on this forty acres in question. Her father lived with his father up to the time of his death, and his widow and child continued to live there for some time afterwards. Avery Canfield was married to plaintiff's mother in 1858. As we understand the record, he always lived with his parents upon the forty in question, both before and after his marriage. Shortly before his marriage, his father conveyed to him one hundred acres of land. His brother-in-law testified in this case that prior to such time the only property he had was one horse. He was in frail health, and died of consumption three years after his marriage. A few days before his death he conveyed back to his father fifty acres of the land mentioned; his father assuming an incumbrance of $100, and leaving the other fifty acres clear to the estate of the son. The fifty acres conveyed back to Sherman Canfield was disposed of by him during his

lifetime, and at the time of his death he left no other land than the forty acres in question. At the time of the purchase by Caldwell the plaintiff was only in her eighth year, but was living with her mother in the neighborhood, who was conversant with all the facts relating to the property. In 1866 the mother obtained the appointment of one Mr. Edgar, a relative of the family, as guardian of the property of the daughter. In the petition for guardianship, it was averred that she had real property, and that it was necessary to sell the same for the purpose of her support and education. The application to sell all her real property was granted by the probate court, and the real estate left by her father was sold for $835, and report of sale made, all in the year of 1866. Mr. Edgar continued as guardian of the plaintiff until she arrived at her majority, and was discharged upon a final report in October, 1877. The mother of the plaintiff is still living, and is a witness in her behalf; her present name being Mrs. McFall. Jerusha Canfield, the widow of Sherman Canfield, lived until the year 1900.. All the grantors in the Caldwell deed died before the commencement of this suit, except Alexander Zaring, who joined in the deed as husband of one of the heirs. Prior to the bringing of this suit, no claim was ever asserted by the plaintiff or by her mother or guardian in her behalf to any interest in this land. Plaintiff's mother testifies that about the time of the making of the deed to Caldwell she conferred with plaintiff's guardian, and "asked him if he thought she had ought to sign it, and Grandma Canfield had asked us to," and that Edgar advised her: "You keep your name off of it, and he [Edgar] said we had no right to sign it." The land in question was only slightly improved and only partly under civilization at the time of the purchase by Caldwell. He commenced adding improvements, and made the same his homestead. He purchased other lands adjoining it. The improvements placed upon the land by him amounted in value

at the time of his death to over $12,000. In June, 1877, he executed a mortgage upon the land to the Aetna Life Insurance Company, wherein he covenanted that he was the absolute owner of the land in fee simple, and this was duly recorded. In 1904 he executed another mortgage to a savings bank for $8,000, containing like covenants. The plaintiff was married in June, 1877, and continued to live in Mahaska County until the latter part of the year 1877. Previous to her marriage, she had spent two years as a student at Pella University. In the latter part of 1877 she and her husband removed to Kansas, where they remained about five years, and then returned to Mahaska County, where they lived for the next five or six years. They then moved to Nebraska, and from there to northern Iowa, and from there to Minnesota. The plaintiff claims that she never knew of her interest in this land until her mother informed her of it a short time before the bringing of this suit. She does not, however, testify to any fact imparted to her by her mother which has not been known to her ever since she arrived at her majority. She knew all the facts pertaining to her relationship and to the ownership of the property by her grandfather. She knew of the acts of ownership exercised by Caldwell, and knew of the extensive improvements he was making thereon from time to time. She testified that she knew, or supposed, that Caldwell claimed to be the absolute owner of the property. Her mother testified to the same knowledge. Plaintiff's mother also testified that at the time of making the application for the appointment of Mr. Edgar as guardian she told Mr. Edgar and the county judge all the facts in relation to the forty acres, and that they knew the interest her daughter had therein.

In addition to the defenses already referred to, defendant pleaded that Avery Canfield had received his full share of his father's estate in the form of an advancement in the conveyance of the real estate referred to. Some of

the circumstances already recited are urged in support of that plea. They also called as witnesses Alexander Zaring, hereinbefore referred to, who testified that at the time the deed to Caldwell was executed the family talk was that Avery Canfield had received his share by conveyance of the other land, and that was the belief of the witness when he signed the deed. The witness Howell, a brother of plaintiff's mother, was also called on that question. He was sixteen years of age at the time of the transaction, but testified to the family talk to substantially the same effect as Zaring. The competency of this testimony is called in question by the plaintiff. The foregoing statement of facts will perhaps suffice for the present to a discussion of the legal questions involved.

I. The deed to Caldwell was not a quitclaim deed, as contended for by plaintiff, but purported to be a deed to the whole premises. Nor is the warranty contained

1. Deeds: estate conveyed: adverse possession.

therein inconsistent with the granting clause in that respect. *McNear v. McComber,* 18 Iowa, 12; *Sibley v. Bullis,* 40 Iowa, 429; *Wilson v. Irish,* 62 Iowa, 260. Caldwell, therefore, had color of title. There can be no question under this testimony, but what he was in the open and notorious possession of the premises under his deed and under claim of right. His possession was presumptively referable to his deed, and there is nothing in the evidence that has any tendency to overcome such presumption. *Roth v. Munzenmaier,* 118 Iowa, 326; *McCarthy v. Colton,* 134 Iowa, 658; *Elder v. McClaskey,* 70 Fed. 529 (17 C. C. A. 251); *Joyce v. Dyer,* 189 Mass. 64 (75 N. E. 81, 109 Am. St. Rep. 603).

The only question left, then, at this point is: Was his claim of right lacking in good faith? The argument of appellee is that he must have known of the title of the plaintiff, and therefore there could be no good faith. In support of this argument, the appellee relies upon the cases

of *Smith v. Young,* 89 Iowa, 340; *Litchfield v. Sewell,* 97 Iowa, 250, and *Clark v. Sexton,* 122 Iowa, 310. The only support furnished by these cases to appellee's argument is that they announce the rule that a claim of right must be in good faith in order to set the statute of limitations in running. Claim of right under color of title being shown, however, it is presumed to be in good faith until the contrary appears. The party alleging bad faith has the burden of proving it. *Clark v. Sexton,* 122 Iowa, 310; *Blumer v. Land Company,* 129. Iowa, 37; 1 Cyc., 1147, and cases therein cited.

*2. Adverse possession: claim of right: bad faith: burden of proof.*

Turning now to the evidence on this question, we find no direct evidence impugning Caldwell's good faith. If we find bad faith, it must be by inference from his supposed necessary knowledge of all the facts pertaining to the property. If we could know all the facts that were within his knowledge at the time, it would doubtless be easy to determine the question of his good faith. But all the witnesses to the original transaction are dead, and all the facts never can be fully ascertained. This furnishes one strong reason in support of defendants' plea of laches. Assuming that the circumstances which are put in evidence are not sufficient to establish affirmatively the defendants' plea of advancement to Avery Canfield by his father, the circumstances may yet properly be considered as bearing upon the belief of the parties on that question. If the circumstances were such as to induce a belief on the part of Caldwell that Avery Canfield had received his full share, such belief is sufficient to establish his good faith, even though he may have been wholly wrong, in fact, as to the legal rights of the plaintiff. It is impossible to read this record without being strongly impressed with the fact that for some reason the Canfield family and the plaintiff's mother and her guardian and the county judge all believed that the plain-

*3. Same.*

tiff had no further right to any interest in this estate. This state of mind could have arisen out of the knowledge of the supposed advancement in accordance with defendants' theory. It is impossible to account consistently for the conduct of the parties, except upon the theory that they all believed as before stated. There was no fraud or concealment of any kind on the part of Caldwell. Since 1875 he was in no manner related to the plaintiff or her mother. He did not, therefore, exercise an influence by reason of his relationship. Ever since she arrived at her majority the plaintiff has known every fact which she knows today. Her very contention that she did not know she had any interest in the property until her mother expressed an opinion to that effect is a circumstance tending to show that the uniform belief of the family had been otherwise. There was hardly a possibility of oversight or mistake on the question unless some extraneous fact within the knowledge of the family existed, such as the advancement already referred to. This belief may have been erroneous. This would not of itself impeach the good faith of Caldwell. The fact that his title was defective would not of itself impeach his good faith, nor stop the running of the statute of limitations. If the statute of limitations could not run except there be a valid title to support the *bona fides* of a claim of right, there would be no need of a statute of limitations at all. *Laraway v. La Rue,* 63 Iowa, 407, is a case where the defendant held under a deed only purporting to convey an undivided interest. And yet, in spite of the recitals of his deed, he had mistakenly and honestly believed that he had purchased the full title and had held his possession under such belief. It was held that the statute ran in his favor. In the case at bar we think that the evidence not only fails to impeach the good faith of Caldwell in his claim of ownership, but that the circumstances are sufficient to establish affirmatively such good faith. The defendants' plea of the statute

of limitations should therefore have been sustained. In point, see *Jackson v. Whitbeck,* 6 Cow. (N. Y.) 632 (16 Am. Dec. 454); *Dubois v. Campau,* 28 Mich. 318; *Campau v. Dubois,* 39 Mich. 286; *Sands v. Davis,* 40 Mich. 19.

II.     Without further discussion of the evidence in the case, we may say, also, that the defendants should prevail in the suit upon their plea of laches. This suit was brought within a brief period after the death of Alexander Caldwell. He was the last survivor of the parties to the deed under which he held title. It is manifest that the real ground or belief upon which Caldwell maintained his claim of right to the property rested primarily with him. If his title had been attacked in his lifetime, the court could have had the benefit of his explanation. The present defendants are necessarily helpless to prove fully such facts. No excuse whatever is shown for the delay. The plaintiff ought not to be permitted to gain an advantage by delaying her suit until after the death of all parties whose testimony might be available to the defendants. In *Mathews v. Culbertson,* 83 Iowa, 434, this court said: "When, by reason of the laches and delay of the complainant, it has become doubtful whether the other parties can produce the evidence which is necessary to a fair presentation of the case on their part, or when it appears that they have been misled to their disadvantage by such conduct, a court of equity will deal with the remedy as if barred. In such cases the court acts in obedience to the spirit of the statute of limitation, and adopts the reasons and principles on which they are founded, rather than their literal requirements." See, also, *Withrow v. Walker,* 81 Iowa, 651; *Williams v. Woodruff,* 35 Colo. 28 (85 Pac. 90, 5 L. R. A. (N. S.) 1000); *Woodward v. Barr,* 128 Iowa, 727. It is not the province of a court of equity to hear stale claims. When a party unduly sleeps upon his rights, if any, for many years without excuse, he will be required to sleep

4. SAME: equitable relief: laches.

on. No excuse for delay is shown in this case which will justify us in disturbing the widow and heirs in their possession of property which their ancestor in his lifetime held against the world unchallenged for forty years. The decree of the court below must be reversed. The case will be remanded for a decree consistent herewith.—*Reversed and remanded.*

Dᴇᴇᴍᴇʀ, J. (specially concurring). Upon the theory that there was an actual ouster by defendants or those whom they represent as distinguished from a constructive one, dating from the time that plaintiff's disability was removed or one year thereafter, reinforced by the doctrine of laches as stated in the last division of the majority opinion, I concur in the result reached. I do not think that there was a constructive ouster by the deed set forth in the opinion, for there was no claim either in the deed or in fact that defendants' ancestor was acquiring anything more than the interests which the grantors held in the land, and there was no statement therein that they were the "sole and only" heirs of Sherman Canfield, deceased. Indeed, the testimony shows that the grantee knew that plaintiff was an heir, and that he was not getting her title by the deed. He thought, perhaps, that by reason of an advancement to her father she was not entitled to anything; but he did not think he was acquiring her interest, whatever it may have been. But, after taking possession, he believed that he had full title, and acted upon that assumption. After plaintiff's disability was removed, she knew of defendants' claim to full title without any demand or claim of rent, and without any accounting or payment to her of her part, if she was entitled to any. Knowing that defendants' ancestor was claiming full title, this to my mind amounted to adverse possession or ouster, and called for action on the part of plaintiff in assertion of her rights. *Jackson v. Whitbeck,* 6 Cow. (N. Y.) 632 (16 Am. Dec.

454); *Casey v. Casey,* 107 Iowa, 192; *Gillaspie v. Osburn,* 3 A. K. Marsh. (Ky.) 77 (13 Am. Dec. 136), and note; *Jackson v. Tibbits,* 9 Cow. (N. Y.) 252.