FREDERICK T. HUGHES, Appellant, v. W. M. WYATT, ET AL., Appellees.

**Adverse possession:** LIMITATION OF ACTIONS. The mere fact that a deed shows on its face that the grantors are nonresident aliens, not entitled to inherit, will not affect the right of the grantee to take possession of the land and hold adversely, claiming the benefit of the statute of limitations, where the claim of right is in good faith; nor will the mere fact that a grantee knows of a defect in his title, defeat the operation of the statute.

**Same:** COLOR OF TITLE: GOOD FAITH. Where a grantee puts his deed upon record and enters into possession, his possession is presumptively referable to his deed; and in so far as good faith is essential to his claim of right, it will be presumed in his favor.

**Same:** TENANTS IN COMMON: HOSTILITY OF CLAIM. A brother and sister of an intestate, the only collateral heirs, can not be tenants in common with a child of the intestate, who was entitled to inherit the entire estate; and a deed given by such collateral heirs is an assertion of right hostile to the child.

*Appeal from Black Hawk District Court.*—HON. F. C. PLATT, Judge.

SATURDAY, MARCH 12, 1910.

THIS is an action to recover possession of eighty acres

of real estate situated in Black Hawk County. The land in question was formerly owned by John T. Hughes, who died in 1879 seised of the same. The plaintiff claims to have inherited the same as the illegitimate and only child of said Hughes. The defendants claim under a warranty deed executed in October, 1880, by the only brother and sister of the deceased and as his supposed heirs. This deed was recorded October 22, 1880. Its grantee, Robert Wyatt, entered into possession thereunder and continued in such possession until the date of his death in 1903. The present defendants are the widow and children of Robert Wyatt who have continued in the possession since the death of their ancestor. They claim title under such conveyance and plead the statute of limitations. There was a decree for the defendants, and the plaintiff appeals.—*Affirmed.*

*C. D. Kern* and *S. H. Cochran,* for appellant.

*B. F. Swisher* and *Edwards & Longley,* for appellees.

EVANS, J.—For some years prior to 1877, John T. Hughes lived at Cedar Falls. He was married and maintained a home. His wife had one child by a previous marriage. The plaintiff was born out of wedlock in July, 1871. When three or four years old, he was brought to the home of Hughes by his mother, one Anna Brown, and was taken and cared for as one of the family by Hughes and his wife. Hughes separated from his wife in 1877 and left the country. About the same time, his wife obtained a divorce from him. He died in Pottawattamie County in 1879. The fact of his death was generally known in and about Cedar Falls about the time it occurred. The plaintiff continued to live with Mrs. Hughes and her son for seven or eight years after the death of Hughes. Evidence was introduced on behalf of

plaintiff tending to show that he was the illegitimate son of Hughes, and that he was generally and notoriously recognized as such by Hughes in his lifetime. Much of the argument is devoted to a discussion of the sufficiency of such evidence. The mother was not a witness in the case. Whether she be living or not does not appear. The evidence as to paternity was therefore necessarily uncertain. The story of his childhood is pathetic enough, and we will not enter into a discussion of its details, but will pass first to a discussion of the defense of the statute of limitations.

As already indicated, Hughes left no child, unless the plaintiff be such. He left an only brother and sister residing in Canada, Edward Hughes and Rosa Knowles. As the supposed heirs of their brother, they sold the land in question to Robert Wyatt by warranty deed for a full and valuable consideration. It is undisputed that Robert Wyatt entered into possession of the land under such deed and exercised unqualified acts of exclusive ownership over it; he fenced it and farmed it and claimed it as his own and paid the taxes on it every year until his death in 1903, and did other like acts of ownership; and such possession has been continued by his widow and heirs since his death down to the date of the commencement of this suit, which was some time in the year 1908. The plaintiff became of age on July 15, 1892. Presumptively, therefore, the statute of limitations had completely run on July 15, 1893.

As avoiding the statute of limitations, the plaintiff relies upon two propositions: First, that the brother and sister were nonresident aliens, and as such could not inherit land in Iowa in 1879; second, that the fact that they were nonresident aliens appeared upon the face of the warranty deed, and that the grantee was charged with notice thereof and with the invalidity of their deed, and that such fact prevented the operation of the statute of limitations.

Under the law in force prior to 1868, it was held that a nonresident alien could not inherit real estate in Iowa. *Krogan v. Kinney,* 15 Iowa, 242; *Rheim v. Robbins,* 20 Iowa, 45. The correctness of this holding was seriously questioned later by an equally divided court in *Purcell v. Schmidt,* 21 Iowa, 540; *Brown v. Pearson,* 41 Iowa, 484. In 1868 a new enactment was passed by the Legislature which appeared as sections 1908 and 1909 in the Code of 1873, as follows:

Sec. 1908. Aliens, whether they reside in the United States or any foreign country, may acquire, hold, and enjoy property, and may convey, devise, mortgage, or otherwise incumber the same, in like manner and with the same effect, as citizens of the state.

Sec. 1909. The title to any land heretofore conveyed or transferred by devise or descent shall not be questioned or in any manner affected by reason of the alienage of any person through whom such title may have been derived.

This was the law in force from 1868 to 1888, when these sections were repealed. This court has never had occasion to pass directly upon the question whether under these sections a nonresident alien could take real estate by mere descent. In *Burrow v. Burrow,* 98 Iowa, 400, which was a case involving the construction of a later statute, it was said by way of dictum that these sections while in force did permit a nonresident alien to inherit real estate. We find it unnecessary to decide the question now, although our present impressions are with the correctness of the dictum referred to. We leave the question, however, undecided, and pass to the second proposition urged by the plaintiff, our views upon which are decisive of the case.

The argument of appellant at this point is that the nonresidence of the grantors in the Wyatt deed was recited in the deed itself, and that this fact was notice of the

invalidity of the deed, and that Wyatt could not therefore

1. Adverse pos-
session: limi-
tation of
actions.

avail himself of the statute of limitations. This argument is quite unsound. Many of the authorities cited by appellant relate to recitals of fact in a deed which charge a grantee with notice and which deprive him of the protection which might otherwise be accorded to him as a *bona fide* purchaser without notice. But this is a very different thing from saying that the statute of limitations will not run in favor of such purchaser. ·The mere fact that a purchaser's title is defective does not deprive him of the benefit of the statute of limitations. If the statute could only run in favor of a valid title, it could have no function to perform. The holder of a valid title has no need of the statute. Nor does the mere fact that one knows of the defect in his title defeat the operation of the statute. Knowledge of such defect is not of itself inconsistent with a *bona fide* claim of right. A tax deed void on its face has been held to be sufficient color of title. *Colvin v. McCune,* 39 Iowa, 502; *Hamilton v. Wright,* 30 Iowa, 480; *McBride v. Caldwell,* 142 Iowa, 228; *Laraway v. Larue,* 63 Iowa, 407. There is a limited class of cases where bad faith has been shown to negative an alleged claim of right. This is only another way of saying that the claim of right was disproved. Such was the case of *Litchfield v. Sewell,* 97 Iowa, 247. In that case a squatter upon land received a quitclaim deed from a previous squatter who had built slight improvements upon the land. But it was proved that he was not in possession in reliance upon or pursuance of such quitclaim deed, but that he was holding as a squatter only and expecting to obtain title from the government. In· *Smith v. Young,* 89 Iowa, 340, the widow in possession of land holding a life estate thereunder conveyed her interest to another. A few weeks later, she received a conveyance back of the same interest from the grantee of her grantee, and continued in posses-

sion. It was held that she must be deemed to be holding her possession under her life estate, and that her rights were in no manner enlarged by the circle of conveyances which took away her title and returned it again. Her possession as a life tenant could not set the statute of limitations running.

If we were to hold in the case at bar that nonresident aliens could not inherit under the law in force in 1879, it would not follow that Wyatt might not have honestly believed that he was acquiring a good title.

2. SAME: color of title: good faith.

In other words, such fact would not of itself impeach the good faith of his claim of right. The presumption in such a case is with the claimant in possession. Where the claimant puts a deed upon record and enters into possession, his possession is presumptively referable to his deed. In such a case, in so far as good faith is essential to his claim of right, it is presumed in his favor. *Clark v. Sexton,* 122 Iowa, 310; *Blumer v. Land Co.,* 129 Iowa, 37; *McBride v. Caldwell, supra.* In the *McBride* case, *supra,* the question of possession was complicated by the fact that the claimant in possession took his title by deeds from heirs of a deceased owner, and that he had no deed from one of the known heirs. The case, therefore, involved the question of a tenancy in common. We held that such fact did not prevent on honest belief and claim of right on the part of the claimant in possession that he was the owner of the property, and we held that his possession was adverse to his alleged co-tenants, and that the statute of limitations ran in his favor.

It is argued also in the case at bar that, if the brother and sister of the deceased were entitled to inherit at all,

3. SAME: tenants in common: hostility of claim.

they were tenants in common with the plaintiff, who was also entitled to inherit, and that therefore the statute of limitations could not run in their favor. This position is clearly un-

tenable. Under no circumstances could there be such a tenancy in common in this case. If the plaintiff was entitled to inherit at all from the deceased, he was entitled to all the property as the only child of the deceased. In such a case, the brother and sister could have no interest whatever in the property. The brother and sister could take the property only on the theory that the deceased had no children. Their assertion of right to the property, therefore, was clearly adverse to that of the plaintiff. Their conveyance by warranty deed to Robert Wyatt was an assertion of right necessarily hostile to the plaintiff. We see no escape from the conclusion that 'the statute of limitations had fully run against the plaintiff long prior to the commencement of his action, and this is necessarily decisive of the case. We have no occasion, therefore, to discuss its other features.

We deem it proper to say that certain citations are contained in appellant's brief by book and page and without title of the case. Two of these citations are "100 Iowa, 131," and "78 Iowa, 718." We have looked at both of these citations, and we find nothing on the subject on either page or on the pages preceding or succeeding. This is undoubtedly the result of typographical error. Certain other citations also were erroneous in their pages. These citations, however, contained the titles, and we have been able to find them by the use of the index. We can not impress too strongly upon counsel in cases the importance to us of correct citations. Misprints will occur, but they can be verified and corrected by counsel with less labor than by us. When a spirit of economy induces the omission of the titles and of a final verification of the figures as printed, it were better to omit such citations altogether.

The decree entered below must be *affirmed.*