W. S. DOTSON, *Appellee*, V. THE ATCHISON, TOPEKA &
SANTA FE RAILWAY COMPANY, *Appellant*.

No. 16,361.

SYLLABUS BY THE COURT.

1. ADVERSE POSSESSION — *Grantor — Presumption.* The posses-
sion of a grantor of land after conveyance is not considered
to be adverse to his grantee in whom he has vested entire
title to the premises, and can not be so regarded until the
grantor explicitly renounces the title of the grantee or posi-
tively asserts a claim of title in himself which is brought to
the attention of the grantee.

2. EJECTMENT — *Remedy — Land Used for Railroad Right of
Way without Objection.* Where a railroad company builds a
spur track on land owned by it and afterward sells the land
on which the track is built, without reserving the right of
way, and then continues to use and operate the track for a
great many years for its own convenience, as well as for the
benefit of the public, with the knowledge and acquiescence of
the owner, such owner can not maintain an action of eject-
ment to evict the railroad company from the premises.

3. WORDS AND PHRASES—*"Public Use"—Spur Track of a Rail-
road.* Whether the use of a spur of a railroad is public is
not determined by its length nor the number of industries
it may serve. If it is a part of a railroad system which the
public may use on equal terms as of right, and is subject to
government regulation, it is a public use, whether few or
many are accommodated by its operation.

Appeal from Harvey district court; PETER J. GALLE,
judge. Opinion filed February 12, 1910. Reversed.

*William R. Smith, O. J. Wood, Alfred A. Scott,* and
*C. S. Bowman,* for the appellant.

*Ezra Branine,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action of ejectment,
brought by W. S. Dotson against the Atchison, Topeka
& Santa Fe Railway Company to recover a narrow

Dotson v. Railway Co.

strip of land from the side of lot 7, being a part of block 47, in the city of Newton, on which the railway company had built a spur of its railway system. The spur was built by the railway company in 1871, when it owned the land upon which the railroad was built, including lot 7. Afterward, in August, 1871, this and other lands were conveyed by the railway company, without reservation, to the Newton Town Company. In October, 1875, the lot was conveyed by the Newton Town Company to Muse, Spivey & Randall. They conveyed it to F. L. Briggs in 1882, and he to Harry S. Dean in June, 1886. Dean conveyed it to S. Lehman in April, 1887, who in turn conveyed it to Dotson, the appellee, in January, 1905. There were no exceptions or reservations of the right of way of the railroad in any of the deeds conveying lot 7. The spur was built on the line dividing lots 7 and 8, and has been continuously used for railroad purposes since its construction in 1871. The conveyance of lot 8 contained a reservation of a right of way for the railroad. Two contentions were made by the railway company: First, that it had been in adverse possession of the ground occupied by the company as a right of way for more than fifteen years, with the knowledge and acquiescence of the owner, and had thereby acquired a perpetual easement by prescription; second, the entry upon the land and the use of it for public purposes for so many years, whether with or without the consent of the owner, bars him from maintaining ejectment. The trial court held against both contentions and rendered a judgment evicting the railway company from the strip of land in controversy.

On the first proposition—that the railway company had acquired an easement by prescription—it is argued that the use and enjoyment which will give title to an easement by prescription is substantially the same in character as the adverse possession which will give

52—81 KAN.

title to real estate. That may be conceded, but in either case it must be an adverse possession. It is contended that as the company had uninterrupted and exclusive possession for a longer period than is fixed by the statute of limitations it must be presumed that it was hostile and adverse. From the character of the railway company's possession it is easy to infer that the owners of the lot had full knowledge of the occupancy, but that does not determine that the possession was adverse. It is not enough that possession be exclusive. It must be hostile, and hostility of possession can not be presumed from mere exclusive possession, no matter how exclusive or long-continued it may have been. If there had been no privity of contract relation between the railway company and its grantee, and if the company, being a stranger to the owner, had taken possession and exercised acts of ownership over the land, it might, in the absence of explanatory evidence, have been presumed that its possession was adverse. Here, the railway company conveyed the land after the railroad was built. The conveyance was absolute. No easement or other interest was reserved. In the absence of evidence to the contrary, the possession of the grantor who has made such a conveyance is presumed to be temporary and in subservience to the title of his grantee. The possession of a grantor of land is not considered to be adverse to a grantee who has been vested with the entire title to the premises, and can not be so regarded until the grantor explicitly renounces the title of his grantee or positively asserts a hostile claim of title in himself, which is brought to the attention of the grantee. (*McNeil v. Jordan,* 28 Kan. 7; *Sellers v. Crossan,* 52 Kan. 570; *Hockman v. Thuma,* 68 Kan. 519; *Bird v. Whetstone,* 71 Kan. 430.)

Since it is deemed that the possession of the grantor is held in subserviency to the grantee, and that he does not intend to deny the title he has conveyed, strong,

clear evidence of a purpose to claim adversely to the grantee is necessary to the starting of the statute of limitations. In *Zeller's Lessee v. Eckert et al.*, 45 U. S. 289, it was said:

"The only distinction between this class of cases and those in which no privity between the parties existed when the possession commenced is in the degree of proof required to establish the adverse character of the possession. As that was originally taken and held in subserviency to the title of the real owner, a clear, positive and continued disclaimer and disavowal of the title, and assertion of an adverse right, and to be brought home to the party, are indispensable before any foundation can be laid for the operation of the statute. Otherwise, the grossest injustice might be practiced; for, without such notice, he might well rely upon the fiduciary relations under which the possession was originally taken and held, and upon the subordinate character of the possession as the legal result of those relations." (Page 296.)

Here there was no proof of a disavowal of the title conveyed nor an assertion that the possession held after making the conveyance was other than permissive. In *Railway Co. v. Conlon,* 62 Kan. 416, treating of this question, the court quoted from section 282 of Jones on Easements the statement that " 'if the use of a way over one's land be shown to be permissive only, no right to use it is conferred, though the use may have continued for a century, or any length of time' " (p. 420), and proceeding farther it was remarked that "mere use under a naked license, however long continued, can not ripen into a prescriptive right." (Page 421.) Attention is not called to any evidence which would operate to convert what appeared to be a subservient and permissive possession into a hostile and adverse one, and hence, under the findings of the trial court, it can not be said that the railway company has gained a title to the strip of land by prescription. (*Jobling v. Tuttle,* 75 Kan. 351.)

The question remains whether the landowner is entitled to the remedy of ejectment. As we have seen, the strip had been occupied for railroad purposes about thirty-seven years before this action was begun. The spur passed through two blocks or more of the city, and has been the means of transfer to and from a lumber yard, a mill, a coal yard, and some other industries, and cars have been run upon the track to accommodate the public in loading and unloading potatoes, coal and other articles of merchandise. The strip was occupied by the railway company with the knowledge and consent of Muse, Spivey & Randall, and not until shortly before this action was brought was there objection by anyone to the occupancy of the lot for railroad purposes. Whatever remedy the landowner may have, ejectment is certainly not available to him under our decisions. In *Mo. Pac. Rly. Co. v. Gano,* 47 Kan. 457, where the company had negotiated with the landowner for a right of way but had failed to complete the purchase by payment of the award, the company went upon the land and constructed and operated its railroad with his knowledge and consent. After the railroad had been in operation for about eight years without objection from the landowner, and also without payment for the right of way by the company, the landowner brought ejectment, but the court ruled that he had mistaken his remedy and could not then evict the company from his premises and prevent it from using its railroad. Among other remedies suggested which might be available if they were not lost by delay was an action for the agreed price for the right of way, with interest; also, one to recover the damages sustained, and under certain circumstances that there might be a recovery under a condemnation proceeding.

In *Williams v. Railway Co.,* 62 Kan. 412, a proceeding to condemn a right of way for a railroad was

begun.  An award was made by the commissioners, but the award was not paid.  An agreement was made between the railway company and the landowner that payment need not be made until the owner demanded it.  After recognizing that the payment of just compensation to the owner is a condition precedent to obtaining title to the land, it was remarked that "whatever rights the plaintiffs might have had as against the fund paid, they have no right to recover the land at this late day.  For more than nine years before this proceeding was begun the railway company had entered upon the land, constructed its road at great expense, and had continuously operated the same; and under such circumstances even an owner of the land, if no damages had been paid, would be regarded as having acquiesced therein, and would be restricted to a suit for damages." (Page 416.)  In *Buckwalter v. Railroad Co.*, 64 Kan. 403, the railroad company made an abortive attempt to obtain a right of way over land by condemnation.  It entered upon the land, however, and built its line, and fifteen years later the owner brought an action to eject the company from the land because it had not acquired a title to the right of way, but the court held that "where a landowner has stood by and permitted a railroad company possessing the right of eminent domain to build and put in operation a line of road across his land, and thereby create large interests useful to the company and the public, without first having obtained the authority so to do by the exercise of the right of eminent domain or otherwise, he can not maintain an action of ejectment against such company to recover the right of way occupied by it and necessary for the operation of its road." (Syllabus.)

(See, also, *Morgan et al. v. The Lake Shore and Michigan Southern Railway Co.*, 130 Ind. 101; *Kanaga v. The St. Louis, Lawrence & Western Railroad Company*, 76 Mo. 207.)

It has been argued that the traffic on the spur in question could not be regarded as a public use, and that therefore the rule of the authorities cited does not apply. Whether the use is public is not determined by the length of the spur of the railroad nor the number of industries it may serve. If it is a part of the railroad system which the public may use on equal terms as of right, and is subject to government regulation, it is a public use, whether few or many are accommodated by its operation. In *B. A. & P. Ry. v. M. U. Ry.*, 16 Mont. 504, it was decided that "the character of the way, whether it is public or private, is determined by the extent of the right to use it, and not by the extent to which that right is exercised. If all the people have a right to use it, it is a public way, although the number who have occasion to exercise the right is very small." (Page 523.)

(See, also, *Ulmer v. Railroad Co.*, 98 Maine, 579; *Kan. & Tex. Coal R'y v. Northwestern Coal & Mining Co.*, 161 Mo. 288; *Chicago, Burlington & Northern R. Co. v. Porter*, 43 Minn. 527; *Railway Company v. Petty*, 57 Ark. 359; *Stockdale v. Railroad*, 28 Utah, 201; *Kansas City, S. & G. Ry. Co. v. Louisiana W. R. Co.*, 116 La. 178, 7 A. & E. Ann. Cas. 831 and note.)

The spur we have here is used by the company in connection with its main line, for its own convenience as well as for the use of those having business locations on the line. Some attempt has been made to show that there was a conflict of testimony as to the character of the use, and it is contended that the general finding of the court is conclusive here. There is no real conflict. The testimony all shows that while only a few persons have done business on the spur all who desire to use it are served on equal terms. It has been used as an integral part of the system for the accommodation of the company and the public; it is subject to regulation by the state, and the company, upon refusal,

Carillo v. Construction Co.

could be required to serve all persons desiring service upon the road without discrimination. After this branch has been located and operated for almost forty years it is too late to question whether or not it was well located or whether there was a necessity for the road in that location. We find no substantial evidence in the record that would sustain a finding that the use of the spur is not a public use, and therefore it must be held that ejectment can not be maintained.

It follows that the judgment of eviction must be reversed, and the cause remanded for further proceedings.