NOT DESIGNATED FOR PUBLICATION

No. 112,520

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVID JONES and ANNJANEEN JONES,
*Appellees*,

v.

CASEY JONES and COREY JONES,
*Appellants*.

MEMORANDUM OPINION

Appeal from Dickinson District Court; DAVID R. PLATT, judge. Opinion filed September 4, 2015. Reversed and remanded with directions.

*Dustin W. Mullin*, of Ryan & Mullin, P.A., of Clay Center, for appellants.

*David P. Troup*, of Weary Davis, L.C., of Junction City, for appellees.

Before ATCHESON, P.J., BUSER and GARDNER, JJ.

*Per Curiam*:  Casey Jones and Corey Jones appeal from a summary judgment finding that David and AnnJaneen Jones gained title to Casey and Corey's land by adverse possession. The district court found David and AnnJaneen's use of the property was open, exclusive, continuous, and their claim was knowingly adverse for a period of 15 years. Because we find that David and AnnJaneen's use of Casey and Corey's property was permissive and not adverse, we reverse.

*Undisputed facts*

After David and AnnJaneen filed suit claiming adverse possession, the parties filed cross-motions for summary judgment establishing the following undisputed facts. The real property at issue consists of 43 acres of pasture located in Dickinson County, Kansas. One side of the property is fenced, but no fence divides the subject property from David and AnnJaneen's adjacent property, which is also pasture.

Casey Jones and Corey Jones inherited the property in 2004 from their uncle, Leland Jones, after his death. Leland had acquired title to the property in 1972 by deed from his brother, Clarence Jones. Clarence's son, David, does not dispute that Casey and Corey were the legal titleholders of the property. David and AnnJaneen own property adjacent to the disputed land and graze cattle on it, but the frequency with which they do so is not established by the record.

Clarence and Leland each had cattle operations. At some point, the brothers operated a cattle business together under the name "Jones Hereford Farms" and "Jones Brothers." It is disputed whether the brothers comingled their cattle and allowed them to graze together on the subject property or whether their cattle grazed only on their individual properties. According to David, only Clarence grazed cattle on the subject property beginning in 1941, while Leland grazed cattle on his own property.

After graduating from college, David helped his father, Clarence, with the cattle business. David added his own cattle to graze on the subject property in the 1970's. David began maintaining the pasture for his cattle in 1978 "by treating weeds, treating for musk thistle, removing cedars, and [doing] all other work necessary to maintain the pasture for [his] cattle."

2

Leland stopped his cattle operation in the fall of 1994, and Clarence stopped running cattle in 1997 or 1998. In either 2000 or 2002, Clarence and his wife gifted their property to David and AnnJaneen. In 2004, Casey and Corey inherited the subject property from Leland after his death. Clarence passed away in 2009.

Casey paid the insurance expenses on the disputed land beginning in 2004 when he and Corey inherited it, and he and Corey shared its property tax expense. Casey annually registered the property with the Farm Service Agency. Casey gave adjoining landowners permission to cross the property to access their adjacent tracts. Corey was on the property only a few times. Although Casey never farmed the land or put cattle on it, he has hunted on it "[q]uite a few" times and has given permission to a third party to hunt on it, as evidenced by Casey's testimony and by that person's affidavit. David, however, never saw anybody else on the property until 2013 when Casey or Corey began building a fence on the property after David asserted his adverse possession claim.

No evidence established that anyone ever requested, was granted, or was refused permission from the title holders to use the land for grazing cattle or that anyone grazing cattle on the land ever informed the title holders they were doing so. No evidence suggested that the title holders otherwise had actual knowledge that others were using their property for grazing cattle or had done anything on the land to maintain it for that purpose.

*The district court proceedings*

The district court found David was the only person who grazed cattle on the subject property and was the sole person who maintained it. The district court held:

"[David and AnnJaneen] openly and exclusively possessed the subject property from 1972 to 1987, a period of 15 years, which possession was adverse to [Casey and Corey] and their predecessor in title.

" . . . [David and AnnJaneen] openly and exclusively possessed the subject property from 1994 when Leland Jones terminated his cattle operation to 2009, which possession was adverse to [Casey and Corey] and their predecessor in title."

The district court ultimately held David and AnnJaneen acquired title to the subject real property by adverse possession. Accordingly, it granted David and AnnJaneen's motion for summary judgment and denied Casey and Corey's motion for summary judgment.

Casey and Corey appealed. A few days before oral arguments in this case, the Kansas Supreme Court decided an adverse possession case−*Ruhland v. Elliott*, 302 Kan. ___ , 2015 WL 4155417 (No. 108, 825, July 10, 2015). At oral argument, this court gave the parties an opportunity to file supplemental briefs addressing the effect of that decision on this case.

During oral arguments, counsel for David and AnnJaneen stated that the 15-year period on which they rely is solely from 1994-2009, not from 1972 to 1987. We thus consider any claim by David or AnnJaneen to adverse possession of this land from 1972–1987 to have been abandoned.

We initially address David's claim that Casey and Corey waived any reliance on *Ruhland* or the *Dotson* presumption it applies, which has been the law in Kansas since at least 1910. See *Dotson v. Railway Co.,* 81 Kan. 816, 106 P. 1045 (1910). David correctly notes that Casey and Corey did not argue for application of the *Dotson* presumption in the district court, implying that they should be barred from so doing on appeal. See Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 41) (appellant's brief must include the "arguments and authorities relied on"); *State v. Bowen*, 299 Kan. 339, 355,

4

323 P.3d 853 (2014) ("When a litigant fails to adequately brief an issue it is deemed abandoned.").

But "this court will generally consider a new legal theory on appeal when that newly asserted theory involves only a question of law arising on proved or admitted facts and that question is finally determinative of the case. See *State v. Anderson*, 294 Kan. 450, 464–65, 276 P.3d 200, *cert. denied* 133 S. Ct. 529 (2012); *Copes*, 290 Kan. at 213." *State v. Bailey*, No. 110, 936, 2014 WL 5849265, at *2 (Kan. App. 2014)(unpublished opinion). Such is the case here. *Dotson* merely establishes a legal presumption to be applied to the facts which were established in the cross-motions for summary judgment, and that presumption, as discussed below, is finally determinative of the case.

*Did the district court err by granting summary judgment?*

Whether a party has acquired title by adverse possession is a question of fact to be determined by the trier of fact. *Schaake v. McGrew, et al*, 211 Kan. 842, 845, 508 P.2d 930 (1973). In reviewing a decision on cross-motions for summary judgment we conduct an independent review of the facts.

"[C]ompeting motions for summary judgment [do] not alter the standard of review. *Wheeler v. Rolling Door Co*., 33 Kan. App. 2d 787, Syl. ¶ 1, 109 P.3d 1255 (2005) (recognizing that mere filing of cross-motions for summary judgment does not obligate court to enter summary judgment; rather, court must independently determine that there are no genuine issues of material fact before entering summary judgment). That independent review conducted by this court in the same manner as the district court is under the well-known standard: Courts will uphold the summary judgment if no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. The evidence is viewed in the light most favorable to the nonmoving party. Where reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Bracken v. Dixon Industries, Inc*., 272 Kan. 1272, 1274–75, 38 P.3d 679 (2002). But, if a plaintiff wholly fails to come forward with

5

evidence to support an essential element of a claim, then the defendant is entitled to summary judgment. *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 318, 241 P.3d 75 (2010)." *Neis v. Board of Douglas County Comm'rs.*, No. 106, 513, 2013 WL 310346, at *14 (Kan. App. 2013)(unpublished opinion).

Similarly, when opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. *Iron Mound, v. Nueterra Healthcare Management,* 298 Kan. 412, 417, 313 P.3d 808 (2013). Where, as here, the parties file cross motions for summary judgment, the court is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if the record reveals a genuine issue of material fact. *Midwest Concrete Placement, Inc. v. L&S Basements, Inc.*, No. 07-2316-JAR, 2009 WL 1162391, at *2 (D. Kan. 2009)(unpublished opinion), aff'd, 363 Fed. Appx. 570 (10th Cir. 2010).

The Kansas adverse possession statute provides: "No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years." K.S.A. 60-503. We exercise de novo review over a district court's interpretation of the adverse possession statute. See *Dillon Real Estate Co. v. City of Topeka*, 284 Kan. 662, 665, 163 P.3d 298 (2007). This statute requires a party claiming ownership by adverse possession to have: "(1) possessed the property for a period of 15 years in a manner (2) that is (a) open, (b) exclusive, and (c) continuous; and (3) that is either (a) under a claim knowingly adverse or (b) under a belief of ownership." *Ruhland*, 2015 WL 4155417, at *4-5. David and AnnJaneen claim their possession was knowingly adverse.

"A party seeking title by adverse possession must present clear and convincing evidence of the requisite statutory elements. [Citations omitted.]" *Crone v. Nuss*, 46 Kan.

6

App. 2d 436, 442, 263 P.3d 809 (2011), *rev. denied* 294 Kan. 943 (2012). "When a party seeks title by adverse possession, every presumption is in favor of the holder of the legal title and against the claimant. [Citation omitted]. Kansas law does not allow the property of a person to be taken by another upon slight presumptions or probabilities." *Wright v. Sourk*, 45 Kan. App. 2d 860, 866, 258 P.3d 981 (2011), *rev. denied* 293 Kan. 1114 (2012). In *Wright*, we held:

> "To constitute adverse possession of land, . . . the acts done must be such as to give unequivocal notice of the claim to the land, adverse to the claims of all others, and must be of such a character and so openly done that the real owner will be presumed to know that a possession adverse to his title has been taken." 45 Kan. App. 2d 860, Syl. ¶ 9.

Adverse possession cannot be established by mere inference, and all presumptions favor the title owner. *Ruhland,* 2015 WL 4155417, at *4.

*Was David's possession knowingly adverse?*

Because David and AnnJaneen seek to establish adverse possession under a claim knowingly adverse, they must show their possession was hostile to Casey and Corey's claim. This means that they knowingly claimed adversely to Casey and Corey's title.

> "If a party seeks to establish adverse possession by showing 15 years of continuous, exclusive, and open possession 'under a claim knowingly adverse,' that party must show his or her possession was 'hostile' to the claim of the true owner. See*, e.g., Stark*, 206 Kan. at 432–33 (explaining that while K.S.A. 60–503 eliminated hostility as an 'essential' element by permitting a party to satisfy the statute by showing instead a belief of ownership, a party not relying on belief of ownership must still show 'an adverse or hostile holding'). 'Hostile' in this sense refers not to animosity, but merely to the fact that the possessor is knowingly claiming adversely to the title of the true owner. See 206 Kan. at 432–33; 2 A.L.R.3d 1005 § 2(a), p. 1008 ('With respect to "hostile" possession, there is again general agreement that the term "hostile" does not mean that there must be

7

ill will or malevolence, but only that the one in possession of land claims the exclusive right thereto.'); see also *Fear v. Barwise*, 93 Kan. 131, 136, 143 P. 505 (1914) (emphasizing that the relevant question is whether the possessor intends 'to appropriate the land to his own use without regard to any claim his rival may advance')". *Ruhland*, 2015 WL 4155417, at *5.

*The Dotson presumption applies.*

Possession by permission is never adverse, despite the length of time the land is exclusively used by one claiming adverse possession. *Kratina v. Board of Commissioners*, 219 Kan. 499, 502, 548 P.2d 1232 (1976). This is particularly true when a grantor of land later tries to reclaim title from the grantee by adverse possession.

> "[W]e have consistently held that '"[u]se by the owner's permission will not ripen into adverse possession no matter how long [the land is] used."' *Kratina v. Board of Commissioners*, 219 Kan. 499, 502, 548 P.2d 1232 (1976) (quoting *City of Osawatomie v. Slayman*, 185 Kan. 631, 634, 347 P.2d 405 [1959]). This rule that possession by permission is never adverse within the meaning of K.S.A. 60–503 applies with special force when a grantor of land later attempts to reclaim title from the grantee via adverse possession. In *Dotson v. Railway Co.*, 81 Kan. 816, 818, 106 P. 1045 (1910), this court held:

>> 'In the absence of evidence to the contrary, the possession of the grantor who has made [an absolute] conveyance is presumed to be temporary and in subservience to the title of his grantee. The possession of a grantor of land is not considered to be adverse to a grantee who has been vested with the entire title to the premises, and can not be so regarded until the grantor explicitly renounces the title of his grantee or positively asserts a hostile claim of title in himself, which is brought to the attention of the grantee.'

> "Thus, pursuant to the *Dotson* doctrine, we will assume that a grantor who continues to possess the land the grantor has given away does so with the permission of the grantee. To allow

8

otherwise would be unjust, as a grantee should be permitted to rely on the grantor's total renouncement of the property by transfer. See 81 Kan. at 819 (citing *Zeller's Lessee v. Eckert et al.*, 45 U.S. (4 How.) 289, 296, 11 L. Ed. 979 [1846])." *Ruhland*, 2015 WL 4155417 at *6.

David contends in his supplemental brief that *Ruhland* is limited to its facts and does not apply here, pointing to the court's holding that "the *Dotson* presumption applies when a grantor gives a deed to a grantee in an attempt to evade the grantor's creditors and then continues to remain in possession." *Ruhland*, at *8. But a fair reading of *Ruhland* shows that the court did not limit the *Dotson* presumption to such facts, and *Dotson* itself presented no facts regarding avoidance of creditors. Further, the narrower rule David suggests is not supported by the stated rationale for the rule – that "[t]o allow otherwise would be unjust, as a grantee should be permitted to rely on the grantor's total renouncement of the property by transfer." *Ruhland*, 2015 WL 4155417 at *6. We find *Ruhland*'s holding to be broader than David desires, so "pursuant to the *Dotson* doctrine, we will assume that a grantor who continues to possess the land the grantor has given away does so with the permission of the grantee." *Ruhland*, 2015 WL 4155417, at *6.

The record is silent as to whether Leland gave Clarence permission to graze his cattle on the disputed land after Clarence deeded the property to Leland in 1972. But it is undisputed that Clarence continued to graze his cattle on that land until he stopped his cattle operation in 1997 or 1998 and that David, who became Clarence's successor in interest, grazed his cattle on that land since 1970. But where, as here, there is no evidence that the grantee has given permission to the grantor to remain on or use the property, the *Dotson* presumption takes the place of such evidence. *Ruhland*, 2015 WL 4155417 at *8 (finding "[t]he district court focused on the fact that there was no evidence [the grantee] had given permission to [the grantor] to remain on the property, but the *Dotson* presumption takes the place of such evidence").

9

In applying the *Dotson* doctrine to our facts, we thus assume that Clarence, as a grantor who continued to possess at least to some degree the land he gave to Leland, did so with Leland's permission. Clarence's grazing of his cattle on the land after he granted it to Leland in 1972 until Clarence stopped his cattle operation in 1997 or 1998 was thus not adverse. This defeats the 15-year period on which David relies (1994 – 2009) in claiming adverse possession.

David contends in his supplemental brief that he can establish 15 years of adverse use independent of Clarence's use of the land and that any presumption that Clarence's possession was permissive does not apply to David's sole use of the land. David asserts that Clarence did not possess the land after 1996 and that David was the sole possessor of it after that date through 2012. But here David relies on facts not of record. The sole facts of record show that Clarence stopped running cattle in 1997 or 1998, not before 1996 as David now asserts. Thus even assuming that David's use of the land as a successor to the grantor should not be deemed to be permissive merely because the original grantor's use of the land was permissive, this argument fails on its facts.

In his supplemental brief, David additionally asserts that the *Dotson* presumption does not apply when a grantor gives up possession of the major part of the property conveyed but remains in possession of a portion under the mistaken belief that it was not conveyed. Even assuming that this exception is recognized under Kansas law, the exception does not apply here because, as David admits, no facts in support of that exception are established in the record. We thus find the *Dotson* presumption applicable.

*David has not rebutted the Dotson presumption.*

Nonetheless, the *Dotson* presumption can be overcome if the grantor (Clarence/David) puts forth "strong, clear evidence" that he "explicitly renounces" the title of the grantee (Leland/Casey and Corey) by positively asserting "a hostile claim of

10

title in himself, which is brought to the attention of the grantee." 81 Kan. at 818-19 also see *Ruhland*, 2015 WL 4155417 at *6. We thus examine the record for such evidence.

No suggestion is made that the original grantor, Clarence, ever took acts sufficient to overcome the presumption. But David and AnnJaneen argue on appeal that "keeping [David's] cattle on the property on a daily basis over years and years, . . . surely should have conveyed to [Casey and Corey] that [David's] possession of the property was adverse or hostile to [Casey and Corey]." They essentially contend that David's sole maintenance of the land and David's continued grazing of cattle on the land, coupled with Clarence's grazing cattle on the land from 1941-1998, necessarily put Casey and Corey on notice of David's intent to adversely possess the subject property.

The facts, however, do not establish that David grazed his cattle on the disputed property "on a daily basis." But even if such facts had been established of record, they would not meet David's burden to show evidence that Clarence and he, "explicitly renounce[d]" the title of Leland or Casey and Corey by positively asserting "a hostile claim of title in himself, which is brought to the attention of the grantee." 81 Kan. at 818.

No facts show that David expressly notified Casey or Corey that he was using their property in such a manner or that he positively asserted a hostile claim of title to the land from 1994 – 2009. Nor do the facts show that Casey and Corey live so close to the disputed property that knowledge of David's acts on their land should be imputed or implied to either of them. No evidence supports a finding that although Clarence's grazing of his cattle on the disputed land until 1997 or 1998 was by permission, David's grazing of his cattle on the land after 1994 was hostile. See *Federal Savings & Loan Ins. Corp. v. Urschel*, 159 Kan. 674, 678–79, 157 P.2d 805 (1945) (explaining that originally nonhostile possessions can become adverse, but such possession must "'become hostile in character'" to start the adverse possession statute running [quoting 2 C.J.S., Adverse Possession § 87]). David provided no evidence "operat[ing] to convert what appeared to

11

be a subservient and permissive possession into a hostile and adverse one." See *Dotson*, 81 Kan. at 819. Thus the undisputed facts establish that David never positively asserted a hostile claim of title in himself which was brought to Casey and Corey's attention.

Further, David has not established that his acts of grazing cattle or cutting weeds were sufficiently open or hostile to give unequivocal notice that he explicitly renounced Casey and Corey's title. Those acts do not meet that burden as a matter of law. See *Trager v. Elliott,* 106 Kan. 228, Syl. ¶ 2, 187 P. 875 (1920) (holding that grazing of cattle on unoccupied land or occasional entries onto unenclosed land to cut grass for hay are insufficient to give unequivocal notice of a hostile claim of adverse possession); *Crone,* 46 Kan. App. 2d at 444 (finding annual or occasional entries on unenclosed land to cut hay are not sufficient to warn the legal owner that the person cutting the hay did so under a claim of right or title). Accordingly, David has failed to show a genuine issue of material fact that he may have "explicitly renounced" Casey and Corey's title by positively asserting a hostile claim of title in himself, which was brought to Casey and Corey's attention. The *Dotson* presumption is thus unrebutted.

The undisputed facts compel the conclusion that David's possession of the land was permissive and was not knowingly adverse. He thus fails to raise a genuine issue of material fact that he could prove all elements of his adverse possession claim by clear and positive proof. This defeats his claim of adverse possession. See *Boese v. Crane*, 182 Kan. 777, 782, 324 P.2d 188 (1958). The district court's conclusion to the contrary was in error. We find it unnecessary to examine whether the facts established the other elements of adverse possession. See *Shaw v. Bandel*, 122 Kan. 343, 346, 251 P. 1086 (1927) (holding that failure to prove any required element precludes a successful adverse possession claim); see also *Ruhland*, 2015 WL 4155417, at *9.

The record reveals no genuine issue of material fact precluding the entry of summary judgment. Reasonable minds could not differ as to the conclusions drawn from

12

the evidence of record, given the undisputed facts and the applicable legal presumptions. Because David and AnnJaneen cannot establish their claim of adverse possession, summary judgment must be entered in favor of Casey and Corey.

We therefore reverse the court's grant of summary judgment in favor of David and AnnJaneen Jones and remand the case with directions to grant summary judgment in favor of Casey and Corey Jones.